**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **JAY OTERO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **vs.** | ) | |
| | ) | **FILE NO. 5:04-CV-0211-4** |
| **GEORGE VITO, D.P.M., FOOT** | ) | |
| **& LEG CENTERS GEORGIA,** | ) | |
| **P.C., SURGICAL CENTERS OF** | ) | |
| **GEORGIA, P.C., and MIDDLE** | ) | |
| **GEORGIA HOSPITAL, L.L.C.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT MIDDLE GEORGIA HOSPITAL'S MOTION AND
BRIEF IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

COMES NOW Defendant Middle Georgia Hospital, LLC (hereinafter the "Defendant Hospital" or "MGH") and hereby submits its Motion and Brief in Support of Motion for Protective Order, showing the following:

**INTRODUCTION**

This is an action for medical malpractice arising out of a limb-lengthening surgery was performed on Plaintiff by Defendant Dr. Vito. Plaintiff seeks recovery under claims of medical negligence, negligence per se, fraud, and negligent credentialing. Plaintiff seeks discovery from Defendant Middle Georgia Hospital related to credentialing of Dr. Vito, in general and to perform the subject operation, and related to any hospital

investigation done into the care rendered by Dr. Vito.  Defendant moves for Protective Order prohibiting discovery of these types of materials..  This Motion should be granted for two independently sufficient reasons.  First, the information sought constitutes privileged peer review material.  Second, the information sought is not relevant to the claims made against Middle Georgia Hospital.

## FACTS AND PROCEDURAL HISTORY

This is an action arising out of a leg-lengthening operation by Defendant podiatrist Dr. Vito to lengthen Plaintiff's legs.  Although Plaintiff's feet and legs were perfectly normal, he chose to undergo this elective procedure because he was only five feet one inch tall and desired to be taller.  (Complaint, ¶¶ 7-11, 13 and Affidavit of Otero, ¶¶  3, 6, and 7).  Plaintiff traveled from his home in California to Macon, Georgia to have the procedure performed in August 2002.

On July 7, 2004, Plaintiff filed a Complaint against all of the named Defendants.  Plaintiff alleges that as a podiatrist, Dr. Vito was not permitted under Georgia law to perform leg lengthening procedures for "cosmetic" purposes.  (See Complaint, generally ).  However, it is not disputed that Dr. Vito was licensed to perform the limb-lengthening procedure, at least under certain circumstances.  It is further alleged that Dr. Vito's subsequent care of Plaintiff was performed negligently.  (Complaint, ¶ 23).  As it pertains to the

Defendant Hospital and Dr. Vito's performance of the subject operation, Plaintiff alleges only that the Defendant Hospital knew or should have known that Dr. Vito allegedly was not legally allowed to perform a cosmetic leg-lengthening procedure, was therefore negligent in granting hospital staff privileges to Dr. Vito, and allowed him to engage in the unlawful practice of medicine. (Complaint, ¶¶ 35, 66, 85-90). Here again, it is not alleged that staff privileges to Dr. Vito should not have been granted – it is only alleged that Dr. Vito should not have been credentialed to perform the subject procedure for "cosmetic" purposes. Plaintiff subsequently amended his Complaint to assert Georgia and Federal RICO claims against the Hospital.

Along with the Complaint, Plaintiff served discovery requests on Defendant Hospital. Many of the interrogatories and requests for documents seem to seek information protected from discovery under the peer review and medical review committee statutes. For example, Plaintiff requests documents related to the credentialing and granting of privileges to Dr. Vito.[1] (Plaintiff's First Interrogatories to Defendant MGH, Nos. 3, 4, 5, 6, 8, 9, 11, 12, 14, 16, and 17 and Plaintiff's First Requests to Defendant MGH

---

[1]    The hospital credentialing process entails review of a medical care provider's qualifications generally and to perform specific procedures. It involves consideration of a physician's education, licenses and certifications, letters of recommendation, interviews, etc. If approved, the medical care provider is appointed to the medical staff and given privileges to perform specified acts.

Nos. 3, 4, 5, 6, 8, 9, 10, 11, 12, 14, 16, 17, and 22, attached as Exh. A and Exh. B)  These requests also seek information regarding MGH's decision to allow Dr. Vito to perform the leg-lengthening procedure at its facility.  (Id.) Plaintiff's other discovery requests are so broad as to include other peer review materials.  For example, Plaintiff seeks information and documents related to any investigations and communications conducted regarding the quality of the care rendered to Plaintiff, as well as to other patients, by Dr. Vito. (Interrogatories Nos. 7, 10, 13, 19, 20, 21, and 25 and Requests Nos. 7, 13, 19, 21, 22, 23, and 24, Exh. A and B).  MGH objected to these discovery requests, but in the spirit of cooperation, produced hospital medical staff bylaws, medical staff rules and regulations, and redacted portions of Dr. Vito's credentialing file.  These documents included Dr. Vito's applications, licenses and certifications, insurance certificates, CVs, delineation of privileges, and letters of recommendations. (Defendant Middle Georgia Hospital's Responses to Plaintiff's First Interrogatories and Responses to Plaintiff's First Requests for Production of Documents to Defendant Hospitals; attached as Exh. C and Exh. D)  The Hospital also stated in its discovery responses that it did not draw any distinction between limb-lengthening done for "cosmetic" versus "non-cosmetic" purposes.  (Id.) Thus, MGH does not deny that Dr. Vito was credentialed to perform the subject procedure on Plaintiff.  Rather, MGH simply disputes Plaintiff's

contention that Dr. Vito was not allowed to perform the procedure for only "cosmetic" purposes.

Pursuant to Federal Rule of Civil Procedure 26(b)(5), Defendant Hospital prepared a Privilege Log identifying the documents it maintains are privileged.  (Attached as Exh. E)  This Defendant now seeks an Order from This Court granting its Motion for Protective Order as it relates to these documents.

## ARGUMENT AND CITATION OF AUTHORITIES

Federal Rule of Civil Procedure 26(b)(1) provides that in general, parties may obtain discovery regarding any matter, <u>not privileged</u>, that is relevant to the claim or defense of any party.  Thus, the use of the discovery process is broad, but it is not unfettered and unlimited.  <u>See</u> <u>Ledee v. Devoe</u>, 225 Ga. App. 620, 484 S.E.2d 344 (1997); <u>E.H. Siler Realty v.  Sanderlin</u>, 158 Ga. App. 796, 797, 282 S.E.2d 381 (1981). Georgia law mirrors Rule 26[2]:  O.C.G.A. §9-11-26(b)(1) provides that parties may obtain discovery

---

[2]   Federal Rule of Evidence 501 governs the assertion of privileges and states that where state applies to the substantive issues in the case, then privileges shall also be determined by state law.  <u>See also</u> <u>Phillips v. Dallas Carriers Corp.</u>, 133 F.R.D. 475, 477 (M.D.N.C. 1990).  Georgia law applies

regarding any <u>non-privileged</u> matter which is <u>relevant</u> to the subject matter involved in the pending action.  Additionally, O.C.G.A. §24-2-1 provides that in order to be admissible at trial, "[e]vidence must relate to the questions being tried by the jury and bear upon them either directly or indirectly. Irrelevant matters should be excluded."  Thus, evidence must logically tend "to prove or disprove any material fact which is at issue in this case…" <u>Kelly v. Floor Bazaar, Inc.</u>, 153 Ga. App. 163, 165, 264 S.E.2d 697 (1980).

O.C.G.A.  §9-11-26(c) further provides that upon motion, the Court may enter an order limiting the scope of discovery and preventing inquiry into certain matters.  O.C.G.A.  §9-11-26(c)(4).  For the reasons set forth below, this Defendant now seeks this protection and respectfully requests that this Court enter an Order prohibiting the discovery of materials deemed to be privileged peer review.

**A.**    <u>**Review of The Care Provided By Medical Professionals and Evaluation Of These Professionals' Credentials, Qualifications, and Competency Constitutes Privileged Peer Review Under Georgia Law.**</u>

---

to the substantive issues in this diversity tort action.  <u>Erie R.R. v. Thompkins</u>, 304 U.S. 64, 58 S.Ct. 187 (1938).

The information sought by Plaintiff relating to Dr. Vito's credentials, qualifications, and competency, in general and regarding the care rendered to Plaintiff, constitutes peer review and is protected from discovery under Georgia law.

1.  <u>Georgia Law Requires A Hospital to Review And Evaluate The Qualifications And Practices Of Its Professionals.</u>

Under Georgia law, a hospital is required to review and evaluate the care and treatment afforded to patients.  O.C.G.A. § 31-7-15 provides:

> (a) A hospital or ambulatory surgical center **shall provide for the review of professional practices** in the hospital or ambulatory surgical center for the purpose of reducing morbidity and mortality and for the improvement of the care of patients in the hospital or ambulatory surgical center. **This review shall include, but shall not be limited to, the following:**
>
> (1) The quality of the care provided to patients as rendered in the hospital or ambulatory surgical center;
>
> (2) The review of medical treatment and diagnostic and surgical procedures in order to foster safe and adequate treatment of patients in the hospital or ambulatory surgical center; and
>
> (3) **The evaluation of medical and health care services or the qualifications and professional competence of persons performing or seeking to perform such services.**
>
> (b) **The functions required by subsection (a) of this Code section may be performed by a "peer**

> **review committee**," defined as a committee of physicians appointed by a state or local or specialty medical society or appointed by the governing board or medical staff of a licensed hospital or ambulatory surgical center or any other organization formed pursuant to state or federal law and engaged by the hospital or ambulatory surgical center for the purpose of performing such functions required by subsection (a) of this Code section…

(emphasis added).

The goal of O.C.G.A. §31-7-15 is to "foster the delivery of quality health care services by providing a method for the in-house review of clinical work performed in the hospital," and to ensure that patients receive quality health care and is an integral component of the healthcare system in the United States.  Eubanks v. Ferrier, 245 Ga. 763, 765, 267 S.E.2d 230 (1980);  Marshall v. Americus-Sumter Cty. Hosp. Auth., 2002 U.S. Dist. LEXIS 26822, 6 (M.D. Ga. 2002).

   2.   Review And Evaluation of Medical Professionals pursuant to O.C.G.A. §31-7-15 Is "Peer Review."

The evaluation of a professional's qualifications and competence pursuant to O.C.G.A.   §31-7-15(3) is accomplished by way of "peer review."  **"Peer review"** is defined as "the procedure by which professional health care providers evaluate the quality and efficiency of services ordered or performed by other professional health care providers…" O.C.G.A. §31-

7-131(1).     Peer  review  can  be  undertaken  by  a  **"medical  review committee"** pursuant O.C.G.A. §31-7-140, or by a **"review organization,"** which includes "any panel, committee, or organization which is primarily composed of professional health care providers which engages in or utilizes peer reviews and gathers and reviews information relating to the care and treatment of patients for the purposes of evaluating and improving the quality and efficiency of health care rendered and reducing morbidity or mortality and performing any of the functions or activities described in Code Section 31-7-15."  O.C.G.A. §31-7-131(3).

A hospital's credentialing and re-credentialing process is one of the main methods by which a hospital complies with O.C.G.A. §31-7-15(3). The credentialing process is undertaken for purposes of evaluating and improving the quality and efficiency of health care rendered by the professionals on the hospital's staff.  Thus, the review of a physician's credentials and qualifications to practice at a hospital pursuant to O.C.G.A. §31-7-15 is clearly a "peer review" activity, as defined by O.C.G.A. §§31-7-130 *et seq.* and 31-7-140 *et seq.*  See also Georgia Hosp. Assn. v. Ledbetter, 260 Ga. 477, 478, 396 S.E.2d 488 (1990).  In this case, what information Defendant Hospital considered and the steps it took to credential and evaluate Dr. Vito clearly constitute peer review activities, as defined above.

3.  <u>Peer Review Activities, Including The Credentialing Process, Are
    Privileged And Not Subject To Discovery.</u>

Under Georgia law, peer review activities, including the credentialing

process, are protected from discovery.  The legislature's intent to promote

review and improvement of health care services is so strong that

confidentiality is provided to those individuals who are members of review

committees and their records:

> [T]he proceedings and records of a review
> organization shall be held in confidence and shall
> not be subject to discovery or introduction into
> evidence in any civil action; and no person who
> was in attendance at a meeting of such
> organization shall be permitted or required to
> testify in any such civil action as to any evidence
> or other matters produced or presented during the
> proceedings or activities of such organization or as
> to any findings, recommendations, evaluations,
> opinions, or other actions of such organization or
> any members thereof.  The confidentiality
> provisions of this article shall also apply to any
> proceedings, records, actions, activities, evidence,
> findings, recommendations, evaluations, opinions,
> data, or other information shared between review
> organizations which are performing a peer review
> function or disclosed to a governmental agency as
> required by law....

O.C.G.A. §31-7-133; <u>See also</u> O.C.G.A. §31-7-143 (a "medical review

committee's" proceedings and records are afforded the identical protection);

<u>see also</u> <u>Doe v. Unum Life Ins. Co. of Amer.</u>, 891 F. Supp. 607 (N.D. Ga.

1995).  Because the goal of improving patient care is so great, the privilege

bestowed on review committees is large in scope.  In fact, the privilege is so absolute, and so broad, that the Georgia Supreme Court has held that the question of whether any review committee meetings were even held or who attended any such meetings would be an intrusion into the proceedings of the committee, making this information non-discoverable.  See Hollowell v. Jove, 247 Ga. 678, 279 S.E.2d 430 (1981); see also Doe, 891 F. Supp. at 610 ("committee proceedings--in all respects--are inviolate and nondiscoverable");  Baldwin Cty. Hosp. Auth. v. Wright, 202 Ga. App. 9, 9, 413 S.E.2d 484 (1991); Emory Clinic v. Houston, 258 Ga. 434, 435, 369 S.E.2d 913 (1988) (these statutes place an "absolute embargo upon the discovery and use of all proceedings, records, findings, and recommendations of peer review groups and medical review committees in civil litigation").

The statutes conferring a privilege from discovery upon the proceedings of such committees have been enacted because of "the concern that the candor necessary for the effective functioning of these committees would be destroyed if their proceedings were discoverable." Eubanks v. Ferrier, 245 Ga. at 765.  These statutes legislatively endorse the belief that "[c]onstructive professional criticism cannot occur in an atmosphere of apprehension that one doctor's suggestion will be used as a denunciation of a colleague's conduct in a malpractice suit." (quotations omitted)  Hollowell,

247 Ga. at 682.   Thus, with these protections in place, medical care providers can honestly evaluate each other's care without fear or retribution from a colleague or a patient.

In this case, the protection afforded by O.C.G.A. §§31-7-133 and 31-7-143 clearly applies to information reviewed and generated by the medical review committee which evaluated Dr. Vito's general competence and his competence to perform the perform the subject medical procedure, i.e. the leg-lengthening procedure.   See Hollowell, 247 Ga. at 682.   The case of Patton v. St. Francis Hosp., 246 Ga. App. 4, 539 S.E.2d 526 (2000), is instructive in this case.   In Patton, a physician sued the hospital after his hospital privileges were terminated following the death of a patient.   Dr. Patton contended that the proceedings which resulted in the revocation of his privileges were conducted unfairly, and in discovery, sought records from these peer review and medical review committee proceedings.   His motion to compel these records was denied by the trial court pursuant to O.C.G.A. §§31-7-133 and 31-7-143.   The Court of Appeals affirmed the ruling and reiterated that these types of proceedings are absolutely privileged in order to preserve the candor necessary for the effective functioning of medical review committees.   Id. at 6.   Additionally, the Court rejected outright Dr. Patton's argument that the statutory privileges were not applicable  because the peer review process itself was being challenged.   The Court stated that

the discovery embargo applicable to peer review and medical review committees applies in "any civil action." Id. at 8 (quoting from O.C.G.A. §§ 31-7-133 and 31-7-143). See also Freeman v. Piedmont Hosp., 264 Ga. 343, 444 S.E.2d 796 (1994)(upholding of denial of motion to compel discovery of hospital's peer review proceedings resulting in disparaging reports); Baldwin Cty. Hospital Auth. v. Wright, 202 Ga. App. 9, 413 S.E.2d 484 (1991)(holding that discovery was prohibited in an action alleging a violation of the peer review statute and denial of hospital privileges).

The case of Hudgins v. Bawtinhimer, 196 Ga. App. 386, 395 S.E.2d 909 (1990),  is also instructive because like the case at bar, it involved a lawsuit brought by a patient.  In Hudgins, a patient brought a lawsuit against CPC Parkwood Hospital and his psychiatrists as a result of his involuntary commitment into a drug program.   In relevant part, the plaintiff sought information related to the institution's decision to grant staff privileges to his treating psychiatrists.   The Court of Appeals affirmed the trial court's denial of the plaintiff's discovery requests on the basis that the information sought was privileged and confidential. Id. at 390.

As these statutes and cases demonstrate, discovery of peer review information, including a hospital's evaluation of a physician's qualifications and competency, is unquestionably prohibited.   Therefore, Defendant Hospital's Motion for Protective Order should be granted.

**B.**   **The Information Plaintiff Seeks Does Not Meet The "Original Source" Exception; And, Even If Certain Materials Did Meet The Exception, Plaintiffs Must Acquire The Information *From* The "Original Source".**

Defendant anticipates that Plaintiff will contend that he is entitled to "original source" documents from Defendant Hospital.  Such a claim would be patently erroneous.  O.C.G.A. §§31-7-133 and 31-7-143 provide a very narrow exception from the privileges set forth above – namely that information, documents, or records otherwise available from outside, original sources are not immune from discovery or use in a civil action. However, to the extent that any original source information is available, it must be acquired from that source, rather than directly from the review committee.   See Doe, 891 F. Supp. at 609(discussing the rationale behind requiring the requesting party to seek "otherwise available" material from the "original source").  In Doe, the Northern District of Georgia commented on the original source exception as follows:

> Though it is clear that documents and information "otherwise available from original sources "are not immune from discovery, it is also clear that peer review organizations are not "original sources" of "otherwise discoverable" information, both because any information for which such organizations are original sources is absolutely privileged, and because all "otherwise available" material must be acquired from the original source.

(emphasis supplied) Id.  In holding that the "committee proceedings--in all respects--are inviolate and nondiscoverable, " the district court made the following analogy:  "In short, the peer review statutes confer upon peer review organizations the qualities of a black hole; what goes in does not come out, and, unless the information exists in duplicate in the surrounding orbit, nothing that went in is discoverable." Id. at 610.

In this case, Plaintiff seeks materials reviewed and generated by the Hospital's review committees undertaking to evaluate Dr. Vito's qualifications, both generally and to perform the leg lengthening procedure, and the quality of his care to Plaintiff.  Thus, it is clear that Plaintiff is not entitled to any of the information considered by the committees responsible for credentialing Dr. Vito and any peer review committees that may have reviewed his performance while on staff at Defendant Hospital.  To the extent that any "outside" information or documents that were not generated by the committees but nonetheless considered exists, Plaintiff would be required to acquire the information from the "original source," not the Defendant Hospital.  Id. at 609.

**C.**   **The Information Contained In Dr. Vito's Credentialing File Is Not Relevant or Reasonably Calculated To Lead To The Discovery Of Admissible Evidence.**

In addition to being privileged, the information sought by Plaintiff is not subject to discovery because it is not relevant to the issues in this case.

Georgia law provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." O.C.G.A. §9-11-26(c).  Additionally, in order to be admissible, evidence must relate to the questions being considered by the jury.  O.C.G.A. § 24-2-1; see also Kelly v. Floor Bazaar, Inc., 153 Ga. App. 163, 165, 264 S.E.2d 697 (1980).

        In this case, Plaintiff seeks irrelevant information relating to Defendant Hospital's decision to grant privileges to Dr. Vito.  For example, Plaintiff seeks information regarding "any documents, correspondence or communications wherein either you or Defendant Vito set forth or discuss whether Defendant Vito is authorized to perform **cosmetic** limb-lengthening procedures at your facility."  (emphasis added)(See Exh. A).  In order to be relevant, Plaintiff's discovery requests must relate to his (only) claim against this Defendant - that the Defendant Hospital knew or should have known that Dr. Vito allegedly was not legally allowed to perform a cosmetic limb-lengthening procedure and should not have allowed him to perform it.  Here again, it is not alleged that staff privileges to Dr. Vito should not have been granted – it is only alleged that Dr. Vito should not have been credentialed to perform the subject procedure for "cosmetic" purposes.  Defendant responded in its responses to discovery that the term "cosmetic" in this

context is vague and ambiguous because the Hospital does not make this distinction with respect to this particular procedure.  The Hospital further responded that Dr. Vito was authorized to perform the limb-lengthening procedure performed on Plaintiff, for any purpose.  (Id.)  Thus, the only question for the trier of fact, as it relates to this Defendant, is whether Dr. Vito was permitted under Georgia law to perform a "cosmetic" leg-lengthening procedure.   Therefore, discovery requests which seek information regarding the Hospital's decision to authorize Dr. Vito to perform the subject procedure, in addition to being privileged, bear no relevance on the issues in this case.

## CONCLUSION

For the foregoing reasons, Defendant Middle Georgia Hospital respectfully requests that this Court grant its Motion and enter a Protective Order prohibiting the discovery of information related to credentialing of Dr. Vito, in general and to perform the subject operation, and related to any investigation done into the care rendered by Dr. Vito.

This 3rd day of June, 2003.

Respectfully submitted,

WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL, LLC


/s/ Chloé E. Dallaire
John K. Train, IV
State Bar No.: 715267
Chloe E. Dallaire
State Bar No.: 203453

Suite 3000
950 East Paces Ferry Rd.
Atlanta, Georgia  30326          Attorneys for Defendant Middle Georgia
404-876-2700                     Hospital, LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing

pleading has, by E-Filing, been furnished to all counsel of record as follows:

Attorney for Plaintiff:
Mark A. Inman, Esq.
260 Peachtree Street, NW
Suite 1200
Atlanta, GA 30303

Attorney for Plaintiff:
Prescott L. Nottingham, Esq.
6385 Black Water Trail
Atlanta, GA 30328

Attorney for George Vito, D.P.M.
and Foot & Leg Centers Georgia,
P.C.:
John C. Edwards, Esq.
Edward Long, Esq.
Martin Snow, LLP
240 Third Street
P.O. Box 1606
Macon, GA 31202

Attorney for Surgical Centers of Georgia,
P.C.:
R. Lars Anderson, Esq.
778 Mulberry Street
Macon, GA 31201

Brynda Rodriguez Insley, Esq.
Insley & Race, LLC
Two Midtown Plaza
1349 W. Peachtree Street
Suite 1450
Atlanta, Georgia 30309

This 3rd day of June, 2005.

Respectfully submitted,

WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL, LLC

/s/ Chloé E. Dallaire
John K. Train, IV
Georgia Bar No. 715267
Chloe E. Dallaire
Georgia Bar No. 203453

950 East Paces Ferry Rd.
Suite 3000
Atlanta, Georgia  30326
404-876-2700

Attorneys for Defendant, Middle Georgia
Hospital, LLC