IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| JAY OTERO, : | |
| : | |
| **Plaintiff,** : | |
| : | |
| vs. : | 5:04CV211 (DF) |
| : | |
| GEORGE VITO, D.P.M., FOOT & LEG : | |
| CENTERS GEORGIA, P.C., SURGICAL : | |
| CENTERS OF GEORGIA, P.C., and : | |
| MIDDLE GEORGIA HOSPITAL, L.L.C., : | |
| : | |
| **Defendants.** : | |

**O R D E R**

This matter is again before the Court on discovery related issues. The Court has considered Surgical Centers of Georgia, P.C.'s ("SCG") Motion for a Protective Order (tab 66) and Middle Georgia Hospital, L.L.C.'s ("MGH") Motion for a Protective Order (tab 72), finding that both are due to be granted in part. Also, the Court has determined that Plaintiff's Motions to Compel (tabs 79, 81, 85, and 87) are to be denied in part.

**I.     FACTUAL BACKGROUND**

The facts of this case have been laid out previously, but will be briefly summarized here. Otero, a resident of California, traveled to Macon, Georgia and underwent a cosmetic leg-lengthening operation that was preformed by Dr. Vito at MGH. Vito is a licensed podiatrist. He is employed by Foot and Leg Centers of Georgia, P.C. ("FLC") and has

privileges at both MGH and SCG. Otero returned to SCG twice for follow-up surgical procedures made necessary by the initial surgery. Dissatisfied with the results of the leg-lengthening procedure, Otero sought other care and filed this action.

Otero's initial complaint had nine counts and has subsequently been amended to include a total of twelve counts. Following the holding of Georgia courts, this Court granted Otero's motion for summary judgment on the claim of negligence per se. A ruling on Otero's motion for summary judgment on the negligent credentialing claim was delayed until the parties had an opportunity for sufficient discovery.

## II.     LEGAL DISCUSSION

The motions for protective order filed by Defendants MGH and SCG and the motions to compel filed by Otero overlap in subject matter. There are three primary areas of discovery that are in dispute: (1) information from Vito's credentialing file; (2) information about patient's other than Otero who have undergone the leg-lengthening procedure; and (3) information known about allegations of records falsification. For the sake of simplification, the Court will consider the discovery disputes by subject matter rather than by motion.

### A.     *Credentialing Process*

SCG asks the Court to prevent it from having to disclose information contained within it's privilege log. The information contained within the privilege log, according to

SCG, is protected by the peer review privilege as it relates to the credentialing of Vito to perform surgery, specifically gastroc recision surgery. MGH seeks to be protected from disclosing information, which it asserts is protected by the peer review privilege, regarding the peer review process involved in credentialing Vito to perform the leg-lengthening operation at MGH.

The peer review privilege, as recognized by Georgia law under O.C.G.A. § 31-7-133(a), is nearly impossible to penetrate.[1] "The General Assembly has placed an absolute embargo upon the discovery and use of all proceedings, records, findings and recommendations of peer review groups and medical review committees in civil litigation." *Emory Clinic v. Houston*, 369 S.E.2d 913, 913 (Ga. 1988). Indeed, the General Assembly codified this privilege "to foster the candor necessary for effective peer review, which is an essential element of providing quality health care services." *Freeman*, 444 S.E.2d at 797.

The peer review privilege is not without limits. The Georgia Court of Appeals has clarified that a medical institution is not immune from suit because of the peer review privilege. *See McCall v. Henry Med. Ctr., Inc.*, 551 S.E.2d 739, 742 (Ga. Ct. App. 2001) (stating that peer review immunity does not eliminate "a hospital's responsibility to its patients to exercise reasonable care in ensuring that medical providers are qualified.").

---

[1] An exception to the privilege is recognized when the allegation is that a violation of O.C.G.A. § 31-7-133(a) has occurred. It is also possible to discover documents used in the peer review process if the document is able to be obtained from its original source. Indeed, participants in the peer review process may be interviewed but may not be asked about the peer review process. *See Freeman v. Piedmont Hosp.*, 444 S.E.2d 796, 797 (Ga. 1994).

Indeed, the tort of negligent credentialing exits to ensure that hospital's fulfill their duty to "examine the qualifications of a physician seeking staff privileges and to limit the privileges to areas it deems the physician qualified for." *Butler v. South Fulton Med. Ctr.*, 452 S.E.2d 768, 771 (Ga. Ct. App. 1994). Mindful of the peer review privilege and a plaintiff's tort action, in *McCall*, the Georgia Court of Appeals reasoned that the peer review privilege could not be the basis for summary judgment in favor of the hospital. But the *McCall* court did not find that the peer review materials were discoverable, rather it directed the trial court to consider plaintiff's motion to compel after determining that the privilege was not a shield against possible tort actions.

In this instance, the Court is not asked to excuse possible negligence by SCG or MGH in credentialing Vito on the basis of the peer review privilege. Rather the Court must consider the need to protect the peer review process against Otero's interest in discovering information regarding the credentialing process directly from the credentialing institution.

The Court can find no reason to deny the privilege. The documents MGH seeks to protect involve the decision, made by a review committee, to credential Vito to perform the leg-lengthening procedure. SCG wants to protect the materials within its file regarding the decision to credential Vito to perform procedures following the leg-lengthening operation.

The files Otero seeks from MGH and SCG that were used in the credentialing process are protected by the peer review privilege. Otero is not foreclosed from obtaining

4

the materials from other sources nor is he foreclosed from examining how the credentialing process works in the abstract. But Otero may not obtain directly from MGH or SCG the material the institutions considered as a part of Vito's credentialing files. These documents deserve the confidentiality that peer review requires. Should Otero be unable to discover the documents and information contained within Vito's credentialing files at MGH and SCG then the Court will address the admissibility of this evidence at trial by way of a motion in limine.

   B.   *Information Regarding Other Patients and Records Falsification*

Otero seeks information regarding other patients who have undergone a leg-lengthening procedure performed by Vito from MGH, Vito, and FLC and any follow-up care or procedures they may have undergone from SCG. He also seeks information regarding advertising from Vito and FLC. From all defendants, SCG, MGH, Vito, and FLC, Otero seeks information about records falsification.

At this juncture, the Court is unable to fully comprehend and evaluate the claims made by all parties about the production of and protection afforded to this information. Consequently, the Court will not rule on the specific discovery requests at this time. Instead the parties should prepare to discuss each item or category of items regarding the remaining discovery issues at the conference to be held later this week.

### III.  CONCLUSION

According to the foregoing reasoning, Otero's Motions to Compel are **DENIED** in part, as they relate to the credentialing information protected by the peer review privilege and SCG and MCH's Motions for Protective Order are **GRANTED** in part, as they relate to the credentialing information protected by the peer review privilege.  The portions of Defendants' Motions for Protective Order and Plaintiff's Motions to Compel that relate other than to the peer review privilege for credentialing will be ruled upon at the discovery conference.

Finally, the Court must express its displeasure with how this case has proceeded. Discovery conferences were held in this case on March 4, 2005 and again on March 16, 2005. The Court has expressed at every meeting of the parties its desire to handle discovery disputes by resolution after speaking with all parties by way of a telephone conference. Regrettably, the parties in this action ignored the Court's preference and have filed six discovery motions.  The Court is in all hopes that the conference scheduled for this Thursday, August 4, 2005, will resolve all outstanding discovery disputes and prevent any further discovery disputes.

SO ORDERED, this 2nd day of August, 2005.

                                        **s/ Duross Fitzpatrick**
                                        DUROSS FITZPATRICK, JUDGE
                                        UNITED STATES DISTRICT COURT

DF/has