IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| JAY OTERO, | : |
| | : |
| | : |
| Plaintiff, | : |
| | : |
| vs. | :  5:04-CV-211 (DF) |
| | : |
| GEORGE VITO, D.P.M., FOOT & | : |
| LEG CENTERS OF GEORGIA, P.C., | : |
| SURGICAL CENTERS OF | : |
| GEORGIA, P.C., AND MIDDLE | : |
| GEORGIA  HOSPITAL, L.L.C., | : |
| | : |
| | : |
| Defendants. | : |

**O R D E R**

Before this Court are Defendant Middle Georgia Hospital's Motion to Quash (doc. 150) and Plaintiff's letters dated January 11 and 12, 2006 (doc.'s 152, 155, 156) regarding Plaintiff's subpoena on Dr. Harrison and the ensuing discovery dispute over which documents (if any) Dr. Harrison must produce at his deposition next week.  Also before this Court are Plaintiff's letters dated January 13, 2005 (doc.'s 158, 161) and Defendant's letter (doc. 160) regarding an additional discovery dispute

1

over whether Plaintiff is entitled to use certain documents related to Defendant Vito's credentialing file in upcoming depositions in light of the peer-review privilege and this Court's Order dated August 2, 2005 (doc. 97).

## I. Document Production

Due to the pendency of the parties' cross-motions for partial summary judgment, discovery has been stayed in this matter since October 11, 2005. (Order, doc. 126.) Pursuant to an Order dated December 14, 2005 (doc. 134), this Court reopened discovery in this matter to allow Plaintiff to depose two physicians, Dr. Harrison and Dr. Ruch. On December 29, 2005, Plaintiff served a subpoena duces tecum on Dr. Harrison requesting that he produce documents:

> (A) reviewed by Dr. Harrison in preparing his affidavit, dated September 16, 2005; (B) reviewed by Dr. Harrison in preparation for his deposition in this matter; (C) considered in formulating Dr. Harrison's opinions in this case; (D) relied upon by Dr. Harrison in formulating his opinion that Middle Georgia Hospital, LLC complied with JCAHO standards in its credentialing of George Vito, DPM; (E - G) relied upon to support assertions in paragraphs 8, 13, and 16 of Dr. Harrison's affidavit; (H) constituting the JCAHO standards utilized during the credentialing process of Dr. Vito; (I) supporting any opinion that Dr. Vito was legally competent to perform cosmetic limb lengthening procedures; (J) that indicate Dr. Vito had anything other than provisional privileges to perform operations; (K) constituting correspondence from the law firm of Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC or attorneys representing Middle Georgia Hospital, LLC regarding the negligent credentialing claim; (L) a current copy of

> Dr. Harrison's CV; (M) which clarify what is meant by Dr. Harrison's statements that "each member of the medical staff abide by their lawful ethical principles of his or her profession;" (N) referenced in paragraph 12 of Dr. Harrison's affidavit; and (O) constitute the MGH medical chart for Jay Otero.

(Subpoena, Ex. 1 to Def.'s Mem. Supp. Mot. Quash, doc. 151.)

The first issue at hand is whether Plaintiff's subpoena requests documents that are protected from disclosure by the peer-review privilege outlined in O.C.G.A. § 31-7-133.

The Court begins its analysis with the statute at issue, O.C.G.A. § 31-7-133.

Section 31-7-133 provides, in part:

> (a) Except in proceedings alleging violation of this article, the proceedings and records of a review organization shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action; and *no person who was in attendance at a meeting of such organization shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings or activities of such organization or as to any findings, recommendations, evaluations, opinions, or other actions of such organization or any members thereof*. The confidentiality provisions of this article shall also apply to any proceedings, records, actions, activities, evidence, findings, recommendations, evaluations, opinions, data, or other information shared between review organizations which are performing a peer review function or disclosed to a governmental agency as required by law. However, information, documents, or records otherwise available from original sources are not to be construed as immune from discovery or use in any such civil action merely because they were presented during proceedings of such

3

> organization, nor should any person who testifies before such organization or who is a member of such organization be prevented from testifying as to matters within such person's knowledge; *but such witness cannot be asked about such witness's testimony before such organization or about opinions formed by such witness as a result of the organization hearings.*

O.C.G.A. § 31-7-133(a) (Lexis 2005) (emphasis added).

The Court also finds the Northern District of Georgia case of ***Doe v. Unum Life Ins. Co. of Am.***, 891 F. Supp. 607 (N.D. Ga. 1995), to be instructive. In that case, Judge Freeman noted that two kinds of information relating to the peer review process are privileged: (1) material that relates directly to the peer review investigation, which is always nondiscoverable; and (2) information that would have existed regardless of the institution's investigation, but is sought *from the peer review body itself*. ***Id.*** at 611 (emphasis added).

Defendant argues that: (1) Plaintiff's subpoena seeks documents or information protected from disclosure by the peer review privilege and/or medical review privilege; and (2) this Court has already ruled those documents to be privileged (Order, Aug. 2, 2005; Ltr., Dec. 28, 2005). (Mem. Supp. Def.'s Mot. Quash, doc. 151.)

Plaintiff argues that, because Dr. Harrison is an expert witness, Plaintiff

4

Case 5:04-cv-00211-CAR   Document 164    Filed 01/13/06   Page 5 of 10

should be able to inquire into Dr. Harrison's opinions and be allowed "access to all documents he considered as part of formulating his opinions." (Pl.'s Ltr., doc. 158 at 4.) Plaintiff argues in the alternative that, if the Court finds these documents to be privileged, then the Court should prohibit the portions of Dr. Harrison's testimony that relate to "what transpired during a peer review proceeding." *Id.*

Based on the exact language of O.C.G.A. § 31-7-133(a), this Court's prior rulings regarding the peer-review privilege (Order, doc. 97, Order, doc. 134), and relevant case law, the Court finds that the peer-review privilege protects the documents requested by Plaintiff's subpoena from disclosure. The documents requested by Plaintiff are nondiscoverable for two reasons. First, the documents that relate directly to the peer review investigation are nondiscoverable. Second, to the extent that Plaintiff is seeking actual documents presented to Dr. Harrison and the credentialing committee during Dr. Vito's credentialing process, those documents are privileged <u>because Plaintiff is seeking the documents from the committee itself (i.e. from a committee member)</u>. *Doe*, 891 F. Supp. at 611. In short, "peer review organizations are not 'original sources' of 'otherwise discoverable' information, both because any information for which such organizations are original sources is absolutely privileged, and because all 'otherwise available' material must

5

be acquired from the original source." *Id.* at 609.

The Court now turns to Plaintiff's argument that the Court should prohibit the portions of Dr. Harrison's testimony that relate to Defendant Vito's peer review proceeding. Plaintiff alleges that this testimony (Harrison Aff. ¶¶ 6, 7, 12, 13) should be stricken because it violates O.C.G.A. § 31-7-133(a)'s prohibition on testimony concerning "opinions formed by [a] witness as a result of the organization hearings."

As the Court recently noted in its Dember 14, 2005 Order, pursuant to § 31-7-133, a witness may testify that the credentialing process was adopted pursuant to the criteria of the Joint Commission for the Accreditation of Healthcare Organizations ("JCAHO"), and that a healthcare organization used JCAHO procedures in its decision to extend medical privileges to a physician. This can be done without disclosing privileged material related to the peer-review process. *See McCall v. Henry Medical Center*, 551 S.E.2d 739, 742-43 (Ga. Ct. App. 2001); *Sheffield v. Zilis*, 316 S.E.2d 493, 494 (Ga. Ct. App. 1984).

Although Dr. Harrison's testimony in paragraphs 6, 7, 12, and 13 of his Affidavit may technically represent Dr. Harrison's impressions of the organization

6

hearings, the Court will not prohibit this testimony. The peer-review privilege is "designed to ensure effectiveness and competence of health organizations by providing an atmosphere for candor and constructive criticism within the organization, and can do so only by protecting professional peers' opinions and findings as to the competence or performance of members and employees." *Cobb County Kennestone Hosp. Auth. v. Martin*, 430 S.E.2d 604, 605 (Ga. Ct. App. 1993). In this Court's view, allowing Dr. Harrison to testify generally about the peer review process and his impressions of the procedures followed in Vito's case does not compromise the statute's goal of fostering medical-staff candor because the testimony does not implicate Vito's "professional peers' opinions and findings" as to his "competence or performance."

In the end, the enactment of § 31-7-133 "represents a proper legislative choice between the competing public concerns of fostering medical staff candor, on the one hand, and impairing medical malpractice plaintiffs' access to evidence, on the other hand." *Eubanks v. Ferrier*, 267 S.E.2d 230, 232 (Ga. 1980). This Court is not in a position to second-guess the choice that the Georgia legislature has made. Accordingly, Defendant's Motion to Quash is hereby **GRANTED**.

II.     **Return of Documents**

Approximately nine months ago, Defendant produced a redacted copy of MGH's complete credentials file pertaining to Dr. Vito. Following yesterday's hearing, Defendant requested that Plaintiff return Dr. Vito's credentials file. Plaintiff objected.

The second issue for resolution is whether the peer-review privilege bars Plaintiff from using the credentials file produced by Defendant prior to this Court's August 2 Order in the upcoming depositions of Dr. Ruch and Dr. Harrison.

Defendant claims that it produced the documents "out of the spirit of cooperation and subject to the peer review privilege asserted in MGH's responses to Plaintiff's First Interrogatories and Requests for Production." Defendant further asserts that "MGH has never waived its objection or admitted these were not privileged documents." (Def. Ltr., doc. 160, at 2.)

On the other hand, Plaintiff claims that the documents Defendant produced in its Amended Answer to Mandatory Interrogatories were not privileged because they were captioned as "[n]on-privileged portions of Defendant Vito's credentialing file" and Defendant supposedly redacted out all of the privileged information. If this Court finds that those documents were privileged, Plaintiff argues in the alternative that Defendant waived the privilege when it deliberately produced them

in this case.

Pursuant to O.C.G.A. § 31-7-133(a) and this Court's August 2 Order, the Court finds that the credentialing file that Defendant produced to Plaintiff is privileged information. This is so despite the fact that Defendant may have mislabeled the documents in a discovery response, and despite the fact that Defendant, in an abundance of caution, redacted out certain portions of the documents before they were produced.

The Court further finds that Defendant did not waive the peer-review privilege when it produced certain discovery materials to Plaintiff. In so finding, the Court is relying on Defendant's assertion of the privilege in its: (1) Responses to Plaintiff's First Continuing Interrogatories; (2) Privilege Log; and (3) Responses to Plaintiff's First Continuing Request for Production of Documents. Based on these documents, the Court is satisfied that Defendant preserved the peer-review privilege, and holds that Plaintiff is not entitled to utilize the privileged documents in the depositions of Dr. Ruch and Dr. Harrison to discover information related to the peer-review function of the credentials committee.

SO ORDERED, this 13th day of January, 2006.

        **/s/ Duross Fitzpatrick**

        DUROSS FITZPATRICK, JUDGE

        UNITED STATES DISTRICT COURT

DF/jab