IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| JAY OTERO, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | 5:04-CV-211 (DF) |
| | : | |
| GEORGE VITO, D.P.M., FOOT & LEG CENTERS OF GEORGIA, P.C., SURGICAL CENTERS OF GEORGIA, P.C., AND MIDDLE GEORGIA HOSPITAL, L.L.C., | : | |
| | : | |
| Defendants. | : | |

**O R D E R**

**I.   INTRODUCTION**

This matter is before the Court on cross-motions for partial summary judgment filed by Plaintiff Jay Otero ("Plaintiff") (doc. 59) and Defendant Middle Georgia Hospital ("Hospital") (doc. 111). This Court has already granted Plaintiff partial summary judgment against Defendants Dr. George Vito ("Dr. Vito") and Foot & Leg Centers of Georgia, P.C. on the issue of liability, finding that Dr. Vito's performance of cosmetic leg-lengthening surgery on Plaintiff was negligent per se. (Order, Oct. 21, 2004, doc. 28). Plaintiff now seeks to hold the Hospital liable for negligently credentialing Dr. Vito to perform the leg-

1

lengthening surgery. The parties' summary-judgment motions and this Order concern only the duty and breach elements of Plaintiff's negligent-credentialing claim against the Hospital.

Also before this Court are Houston Medical Center's Motion to Quash Subpoena (doc. 143), Plaintiff's Motion for Extension of Time to File Rule 56(f) Motion (doc. 176), and the Hospital's Motion to Strike Plaintiff's Response to the Hospital's Motion for Permission to File Surreply (doc. 197).

## II.  STANDARD OF REVIEW

The summary-judgment rule exists "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (West 2005); *see also Celotex Corp.*, 477 U.S. at 322. A genuine issue of material fact necessary to defeat a properly supported motion for summary judgment arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, a court must review all the evidence in the record while "draw[ing] all reasonable inferences in favor of the nonmoving party,

and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also* *Maynard v. Williams*, 72 F.3d 848, 851 (11th Cir. 1996).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and entitle it to a judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted). If the moving party discharges this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions. *See* *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). Under this scheme, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

### III.  FACTUAL BACKGROUND

Plaintiff underwent cosmetic leg-lengthening surgery at Defendant Middle Georgia Hospital in August 2002. Plaintiff paid Dr. Vito $60,000 to perform this procedure. The procedure was estimated to increase Plaintiff's height (5'1") by one to three inches. At the time of the procedure, Dr. Vito was an employee of Defendant Foot & Leg Centers of Georgia and had surgical privileges at both Defendant Surgical Centers of Georgia and the Hospital. Dr. Vito is a licensed podiatrist. He is not a medical doctor.

At the time of the procedure, Plaintiff was not suffering from any disease, ailment, abnormality, or injury to his feet or legs. During the procedure, Dr. Vito cut the tibia and fibula bones of both of Plaintiff's legs just beneath the knee and attached an external-fixator device to keep the bones separated until regenerated bone filled in the separation. After the surgery, Plaintiff was instructed to adjust the fixator device to increase the separation at a rate prescribed by Dr. Vito. The regeneration of bone in the separated area was supposed to increase Plaintiff's height. Plaintiff's height increased three and one-half inches after the surgery; however, he is now crippled, and must undergo additional procedures to correct the damage allegedly wrought by the leg-lengthening surgery. The Hospital contends that it is not liable for Plaintiff's injuries because its Credentials Committee "followed the standards of the Joint Commission for the Accreditation of Hospitals ("JCAHO") in credentialing Dr. Vito" to perform leg-lengthening operations.

(Def.'s Resp. Pl.'s Mot. Summ. J., doc. 109, at 4.)  The Hospital further contends that "no hospital personnel ever undertook to direct Dr. Vito in the manner that he treated his patients."  *Id.*

## IV.   LEGAL DISCUSSION

Plaintiff argues that he is entitled to summary judgment on the duty and breach elements of his claim because the Hospital's decision to credential Dr. Vito to perform an illegal surgery was either negligent under traditional tort principles or negligent per se under the statute limiting the scope of a podiatrist's surgical practice.  The Court will address Plaintiff's negligence per se argument first.

**A. Negligence Per Se**

Plaintiff argues that the Hospital's decision to credential Dr. Vito, which enabled him to exceed the scope of his professional license, was negligent per se.  (Pl.'s Br. Supp. Mot. Summ. J., doc 61.)  The Hospital asserts that Dr. Vito was "negligent per se in performing surgery on Plaintiff only because the purpose of the surgery was cosmetic," and that the Hospital was "not qualified to pre-screen the reasons for podiatric surgery, or to second-guess a podiatrist's diagnosis." (Def.'s Br. Supp. Mot. Summ. J., doc. 109, at 5, 9.)

The issue presented here is whether, under the applicable statutory and caselaw, the Hospital's grant of surgical privileges to Dr. Vito to perform an illegal surgery was negligent as a matter of law.  The Court's research has not revealed any Georgia case that

squarely addresses this issue.  Nevertheless, the Court will decide this novel question of state law "the way it appears the state's highest court would."  *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1290 (11th Cir. 2001).  If "the state's highest court has not spoken to an issue, a federal court 'must adhere to the decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise.'"  *Id.* (quoting *Ins. Co. of N. Am. v. Lexow*, 937 F.2d 569, 571 (11th Cir. 1991)).  "The issue is not resolved merely by a determination that it has not yet arisen."  *Arceneaux v. Texaco, Inc.*, 623 F.2d 924, 926 (5th Cir. 1980).[1]

While there is no Georgia caselaw on this precise issue, Georgia courts have recognized a cause of action for negligent credentialing and have established the legal standard for a negligent-credentialing claim.  *See,* e.g., *Joiner v. Mitchell County Hosp. Auth.*, 186 S.E.2d 307 (Ga. 1971); *McCall v. Henry Med. Ctr.*, 551 S.E.2d 739 (Ga. Ct. App. 2001).  A cause of action for negligent credentialing arises out of a health care institution's "direct and independent responsibility to its patients to take reasonable steps to ensure that staff physicians using hospital facilities are qualified for privileges granted."  *McCall,* 551 S.E.2d at 742.  This responsibility imposes upon hospitals the duty and the "authority to examine the qualifications of any physician seeking staff privileges and to limit his or her practice to those procedures or areas it deems the physician qualified for, or to completely

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent all Fifth Circuit decisions handed down before October 1, 1981.

bar the physician from such practice because of incompetency, lack of qualifications, inexperience, or recklessness." *Candler Gen. Hosp., Inc. v. Persaud*, 442 S.E.2d 775, 777 (Ga. Ct. App. 1994); *see* O.C.G.A. § 31-7-15(a) (Lexis 2005) ("Hospital Review Act") (requiring hospitals to review, inter alia, the "qualifications and professional competence of persons performing or seeking to perform" medical and health care services within the hospital).

Just as the existence of a cause of action for negligent credentialing is well-settled in Georgia, it is equally well-settled that "Georgia law allows the adoption of a statute as a standard of conduct so that its violation becomes negligence per se." *Cent. Anesthesia Assocs. v. Worthy*, 325 S.E.2d 819, 823 (Ga. Ct. App. 1984). To determine whether the violation of a statute is negligent per se, courts examine the legislative purpose of the statute and employ a two-prong inquiry. First, the court determines "whether the injured person falls within the class of persons [the legislation] was intended to protect." *Id.* Then, the court determines "whether the harm complained of was the harm [the legislation] was intended to guard against." *Id.* If the court determines that the violation of the statute constitutes negligence per se, the court must determine whether the violation is "one which is capable of producing the injury inflicted." *Dhillon*, 605 S.E.2d at 605. The causal connection between the statutory violation and the injury suffered "refers not to the proximate cause element of the negligence action . . . but rather to the character of the legal duty involved." *Worthy*, 325 S.E.2d at 823. In other words, the court must ask: "Is this

7

statutory duty one which, if breached, is capable of producing injury to a [ ] person?" *Worthy*, 325 S.E.2d at 823.

The statute at issue in this case is the Georgia Podiatry Act ("Podiatry Act"), O.C.G.A. § 43-35-3(5)(A) (Lexis 2005). The Podiatry Act defines "podiatric medicine" as "that portion of the practice of medicine identified by," among other things,

> [c]harging a fee or other compensation, either directly or indirectly, for any history or physical examination of a patient in a person's office or in a hospital, clinic, or other similar facility prior to, incident to, and necessary for the diagnosis and treatment, by primary medical care, surgical or other means, of *diseases, ailments, injuries, or abnormal conditions of the human foot and leg*.

O.C.G.A. § 43-35-3(5)(A) (emphasis added).

In *Vito v. Dhillon*, 605 S.E.2d 602, 605 (Ga. Ct. App. 2004), a former patient of Dr. Vito's sued the doctor alleging that the leg-lengthening operation that Dr. Vito performed on him violated the Podiatry Act as a matter of law. The Georgia Court of Appeals agreed. Following this determination, the court employed a negligence-per-se analysis and found that the plaintiff, as Dr. Vito's patient, fell within the class of persons the Podiatry Act was intended to protect, and that "the harm complained of was of the type the statute was intended to guard against." *Dhillon*, 605 S.E.2d at 605. The court also found that it was "self-evident" that Dr. Vito's statutory violation was "one capable of producing injuries of the type which Mr. Dhillon allege[dly] suffered." *Id.* Based on the foregoing, the court

8

concluded that "Dr. Vito's violation of O.C.G.A. § 43-35-3(5) was negligence per se as a matter of law." *Id.*

In *Central Anesthesia Associates v. Worthy*, the Georgia Court of Appeals found that it was negligence per se for a student in a hospital's school of anesthesia (i.e. a non-certified registered nurse anesthetist) to administer anesthesia to a patient in violation of O.C.G.A. § 43-26-9. 325 S.E.2d at 823; *see* O.C.G.A. § 43-26-9 (Lexis 2005) (defining and establishing minimum qualifications for a certified registered nurse anesthetist; requiring anesthesia to be administered by certified registered nurse anesthetist, under direction and supervision of "duly licensed physician with training or experience in anesthesia"). The court also found that the hospital that contracted with a corporation for the provision of anesthesia services had a "duty not to permit violations of O.C.G.A. § 43-26-9 because [the hospital] provided, among other things, the physical resources necessary for such activity to take place." *Id.* at 824. The hospital's responsibility also stemmed, in part, from its duty "'to insure that an adequate, competent medical staff serves the patients within the hospital.'" *Id.* (quoting *Cobb County-Kennestone Hosp. Auth. v. Prince*, 249 S.E.2d 581, 585 (Ga. 1978)). The Georgia Supreme Court affirmed the Court of Appeals's decision, but noted that it did not read the lower court's opinion as "holding that hospitals are liable for the negligence of independent professionals using the hospital's premises." *Central Anesthesia Assocs. v. Worthy*, 333 S.E.2d 829, 833-34 (Ga. 1985).

This Court has already held that Dr. Vito's performance of leg-lengthening surgery on Plaintiff was negligent per se. (Order, Oct. 21, 2004, doc. 28.) The Court now finds that there is a causal connection between Dr. Vito's statutory violation and Plaintiff's injuries. A podiatrist's performance of a surgery that exceeds the scope of his medical license could surely cause a patient injury. Had the Podiatry Act been adhered to, and had the leg-lengthening surgery been performed by a legally and professionally competent physician, it is possible that Plaintiff would have suffered "no injury or at least lesser injury." *See Worthy*, 325 S.E.2d at 823.

The Court now turns to the issue of whether the Hospital had a duty to prevent Dr. Vito from violating the Podiatry Act—a statute that "plainly limits podiatrists to performing that surgery which is necessary to treating 'diseases, ailments, injuries, or abnormal conditions of the human foot and leg.'" *Dhillon*, 605 S.E.2d at 605 (quoting O.C.G.A. § 43-35-3(5)(A)). The Court finds that the Hospital did have this duty because "it provided, among other things, the physical resources necessary for such activity to take place," and it had the responsibility to ensure that a legally competent physician served its patients. *Worthy*, 325 S.E.2d at 824; *see Prince*, 249 S.E.2d at 585. This is not to say that hospitals are always liable for the negligence of independent professionals who have used their facilities to render medical services. The Hospital is liable in this case because it not only provided Dr. Vito with the facilities and resources necessary for Plaintiff's leg-

lengthening surgery, but also because it breached the duty it owed Plaintiff to credential a physician to perform a surgery that he was legally authorized to perform. *See* O.C.G.A. § 31-7-15(a); *Worthy*, 325 S.E.2d at 823. When the Hospital Review Act was enacted, there can be little doubt that the Georgia legislature intended for hospitals to ensure that the physicians it credentialed to use their facilities were, at minimum, legally authorized to perform the procedures or services the physicians sought to perform. Moreover, one of the stated legislative goals in the Podiatry Act and the Hospital Review Act is the improvement of patient care in hospitals statewide. *See* O.C.G.A. §§ 43-35-3, 31-7-15(a)(3). Clearly, a hospital's decision to credential a physician to perform an illegal surgery seriously undercuts this legislative goal.[2]

Accordingly, the Court finds that Plaintiff is entitled to partial summary judgment because Dr. Vito's violation of the Podiatry Act was negligent per se, there was a causal connection between Dr. Vito's statutory violation and Plaintiff's injuries, and the Hospital breached the duty it owed Plaintiff to prevent Dr. Vito's violation of the Podiatry Act.

---

[2] Defendant also argues that it is entitled to summary judgment because "[w]here, as here, an organization, such as MGH, performs a peer review function, it is entitled to immunity from civil or criminal liability [under O.C.G.A. § 31-7-132 ] for decisions and determinations made as part of the same." (Def.'s Reply Br., doc. 203, at 5.) Although O.C.G.A. § 31-7-132 ostensibly shields health care providers and individuals involved in a peer review function from civil liability, this statute is not applicable here because the Hospital's failure to examine Dr. Vito's legal qualifications was not the result of a "peer review" function, as that term is defined in O.C.G.A. § 31-7-131(1). *See Sheffield v. Zilis*, 551 S.E.2d 739, 742-43 (Ga. Ct. App. 2001); O.C.G.A. §§ 31-7-131(1), 132. In this Court's view, the Hospital's establishment of peer review procedures—procedures which did not involve examining a podiatrist's legal authorization to perform a specific surgery—is separate and distinct from the peer review process itself. *See id.*

**B. Negligence**

Plaintiff also argues that the Hospital's credentialing of Dr. Vito was negligent under traditional principles of tort law, notwithstanding any statutory violation. In light of the Court's conclusion above, Plaintiff's negligence argument will not be addressed. *See Motes v. 6 'S' Co.,* 366 S.E.2d 358, 360 (Ga. Ct. App. 1988); *Garmon v. Cassell,* 52 S.E.2d 631, 637 (Ga. Ct. App. 1949).

**C. Motion to Quash Subpoena**

The Court's decision to grant Plaintiff partial summary judgment on the negligent credentialing issue hereby renders Houston Medical Center's Motion to Quash Subpoena (doc. 143) **MOOT**.

**D. Motion for Extension of Time**

The Court's decision to grant Plaintiff partial summary judgment on the negligent credentialing issue hereby renders Plaintiff's Motion for Extension of Time to File Rule 56(f) Motion (doc. 176) **MOOT**.

**E. Motion to Strike**

On March 17, 2006, the Hospital filed a Motion to Strike Plaintiff's Response to the Hospital's Motion for Permission to File Surreply (doc. 197). The Court denied the Hospital's Motion for Permission to File Surreply on March 20, 2006 (Order, doc. 198). The Court did not rely upon Plaintiff's Response to the Hospital's Motion for Permission to File

Surreply (doc. 196) in denying the Hospital leave to file a surreply brief. Accordingly, the Court hereby finds that the Hospital's Motion to Strike Plaintiff's Response (doc. 197) has been rendered **MOOT**.

## V.     CONCLUSION

For the foregoing reasons, Plaintiff Otero's Motion for Partial Summary Judgment as to the duty and breach elements of his negligent credentialing claim against Defendant Middle Georgia Hospital is hereby **GRANTED**, the Hospital's Motion for Summary Judgment (doc. 111) is hereby **DENIED**, Houston Medical Center's Motion to Quash Subpoena (doc. 143) is **MOOT**, Plaintiff's Motion for Extension of Time to File Rule 56(f) Motion (doc. 176) is **MOOT**, and the Hospital's Motion to Strike Plaintiff's Response (doc. 197) is **MOOT**.

SO ORDERED, this 4th day of April, 2006.

**/s/ Duross Fitzpatrick**
DUROSS FITZPATRICK, JUDGE
UNITED STATES DISTRICT COURT

DF/jab