IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| JAY OTERO, | : | |
| | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| vs. | : | 5:04-CV-211 (DF) |
| | : | |
| GEORGE VITO, D.P.M., FOOT & LEG | : | |
| CENTERS OF GEORGIA, P.C., | : | |
| AND MIDDLE GEORGIA | : | |
| HOSPITAL, L.L.C., | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

<u>O R D E R</u>

**I. INTRODUCTION**

This matter is before the Court on a motion for partial summary judgment filed by Plaintiff Jay Otero ("Plaintiff"). This Court has already granted Plaintiff partial summary judgment against Defendants Dr. George Vito ("Dr. Vito") and Foot and Leg Centers of Georgia, P.C. on the issue of liability, finding that Dr. Vito's performance of cosmetic leg-lengthening surgery on Plaintiff was negligent per se. (Order, Oct. 21, 2004, doc. 28, at 5.) Plaintiff now seeks to hold Dr. Vito liable for the unauthorized practice of medicine and battery. (Pl.'s Mot. Summ. J., doc. 135.)

**II. STANDARD OF REVIEW**

The summary-judgment rule exists "to isolate and dispose of factually unsupported claims of defenses." *Celotex Corp v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (West 2005); *see also Celotex Corp.*, 477 U.S. at 322. A genuine issue of material fact necessary to defeat a properly supported motion for summary judgment arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, a court must review all the evidence in the record while "draw[ing] all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Maynard v. Williams*, 72 F.3d 848, 851 (11th Cir. 1996).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and entitle it to a judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted). If the moving

party discharges this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(e); ***Celotex Corp.***, 477 U.S. at 324-26.  This evidence must consist of more than mere conclusory allegations or legal conclusions. *See* ***Avirgan v. Hull***, 932 F.2d 1572, 1577 (11th Cir. 1991).  Under this scheme, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." ***Celotex Corp.***, 477 U.S. at 322.

### III. FACTUAL BACKGROUND

Plaintiff underwent cosmetic leg-lengthening surgery at Defendant Middle Georgia Hospital in August 2002.  Plaintiff signed consent forms and paid Dr. Vito $60,000 to perform the surgery.  The procedure was estimated to increase Plaintiff's height (5'1") by one to three inches. At the time of the procedure, Dr. Vito was an employee of Defendant Foot and Leg Centers of Georgia and had surgical privileges at both Surgical Centers of Georgia and Defendant Middle Georgia Hospital.  Dr. Vito is a licensed podiatrist.  He is not a medical doctor.

At the time of the procedure, Plaintiff was not suffering from any disease, ailment, abnormality, or injury to his feet or legs.  During the procedure, Dr. Vito cut the tibia and fibula bones of both of Plaintiff's legs just beneath the knee and attached an external-fixator device to

keep the bones separated until regenerated bone filled in the separation at a rate prescribed by Dr. Vito. The regeneration of bone in the separated area was supposed to increase Plaintiff's height. Plaintiff's height increased three and one-half inches after the surgery; however, he is now crippled and must undergo additional procedures to correct the damage allegedly wrought by the leg-lengthening surgery.

Plaintiff brought a nine-count complaint against Defendants, alleging (1) negligence per se, (2) unlawful practice of medicine, (3) fraud and misrepresentation, (4) professional malpractice, (5) respondeat superior — Foot and Leg Centers of Georgia, (6) negligent grant of staff privileges, (7) negligent credentialing, (8) respondeat superior — Middle Georgia Hospital, and (9) punitive damages. (Order, doc. 28, at 1.) On August 12, 2004, Plaintiff filed a motion for partial summary judgment against Dr. Vito and Foot and Leg Centers of Georgia as to the negligence per se claim. (Pl.'s Mot. Summ. J., doc. 15, at 1.) On October 21, 2004, this Court granted Plaintiff's partial summary judgment motion as to the negligence per se claim, finding that Dr. Vito's performance of cosmetic leg-lengthening surgery violated the Georgia Podiatry Act,[1] and was negligent per se as a matter of law. (Order, doc. 28, at 5.)

Before the Court is Plaintiff's Motion for Partial Summary Judgment as to his unauthorized practice of medicine and battery claims against Dr. Vito. (Pl.'s Mot. Summ. J., doc. 135.) For the reasons stated below, Plaintiff's motion is **GRANTED IN PART**, and **DENIED IN PART**.

---

[1] *See* O.C.G.A. § 43-35-3(5) (Lexis 2005).

4

## IV. DISCUSSION

### A. Unauthorized Practice of Medicine

Plaintiff argues that, because Dr. Vito performed cosmetic limb-lengthening surgery on him, and because "only licensed medical doctors are allowed to perform cosmetic limb-lengthening surgery in Georgia, Dr. Vito, as merely a podiatrist, is guilty of practicing medicine without a license as a matter of law." (Pl.'s Br. Supp. Mot. Summ. J., doc. 136, at 3.)

Dr. Vito alleges that he did not engage in the unauthorized practice of medicine because the leg-lengthening surgery he performed on Plaintiff met the definition of podiatry under the Georgia Podiatry Act, O.C.G.A. § 43-35-3(5)(A). (Vito's Br. Resp. Pl.'s Mot. Summ. J., doc. 148, at 5-6.) Defendant Middle Georgia Hospital argues, on behalf of Dr. Vito, that a finding that a statutory violation constitutes negligence per se does not automatically give rise to a right to recovery for the unauthorized practice of medicine because Plaintiff must also "demonstrate a causal connection between the negligence per se and the injury," which Plaintiff has not done. (Middle Ga.'s Br. Resp. Pl.'s Mot. Summ. J., doc. 144, at 10.)

The Georgia Podiatry Act provides in pertinent part:

> (5) "Podiatric medicine," which includes chiropody, podiatry, and podiatric medicine and surgery, means that portion of the practice of medicine identified by the acts described in any one of more of the following:
> (A) Charging a fee or other compensation, either directly or indirectly, for any history or physical examination of a patient in a person's office or in a hospital, clinic, or other similar facility prior to, incident to, and necessary for the diagnosis and treatment, by primary medical care, surgical, or other

>   means, of *diseases, ailments, injuries, or abnormal conditions of the human foot and leg.*

O.C.G.A. § 43-35-3 (5)(A) (Lexis 2005) (emphasis added). The Georgia Podiatry Act, by its terms, does not authorize a podiatrist to perform cosmetic leg-lengthening procedure on a patient. *See* ***Vito v. Dhillon***, 605 S.E.2d 602, 605 (Ga. Ct. App. 2004).

This Court has already held that Dr. Vito was not authorized under the Georgia Podiatry Act to perform cosmetic leg-lengthening surgery, and that his performance of this surgery constituted negligence per se. (Order, Oct. 21, 2004, doc. 28, at 5.) In Georgia, Dr. Vito's statutory violation alone subjects him to liability for the unauthorized practice of medicine. *See* ***Dhillon***, 605 S.E.2d at 605; ***Foster v. Ga. Bd. of Chiropractic Examiners***, 359 S.E.2d 877, 882 (Ga. 1987) (holding that, because chiropractor was not authorized by Georgia Chiropractic Practices Act to prescribe or dispense vitamins, minerals, or nutritional substances, and chiropractor did prescribe such items for treatment, such conduct constituted the unauthorized practice of medicine).

The Court is unpersuaded by Defendant Middle Georgia Hospital's argument that Plaintiff must first demonstrate a causal connection between Dr. Vito's negligence per se and the injury he suffered before he can recover for the unauthorized practice of medicine. Plaintiff's negligence per se and unauthorized practice of medicine claims arise out of two distinct causes of action, each with its own elements and requirements for recovery. While the Court agrees that Plaintiff must demonstrate a causal connection between Dr. Vito's negligence per se and Plaintiff's injuries before he can recover on his negligence claim, such a showing is not required for Plaintiff to

prevail on his unauthorized practice of medicine claim. *See* **Dhillon**, 605 S.E.2d at 605; **Foster**, 359 S.E.2d at 882.

Accordingly, because Dr. Vito violated the Georgia Podiatry Act by performing cosmetic leg-lengthening surgery on Plaintiff, this Court holds that Dr. Vito engaged in the unauthorized practice of medicine. Plaintiff's motion for partial summary judgment on his unauthorized practice of medicine claim is hereby **GRANTED**.

## B. Battery

Plaintiff alleges that Dr. Vito committed a battery when he "performed [an] illegal surgery on Plaintiff Otero as Defendant Vito fraudulently misrepresented his ability to perform this procedure and Otero relied to his detriment to [sic] this misrepresentation." (Pl.'s Reply Br., doc. 168, at 6.) Dr. Vito argues that there was no fraud or misrepresentation by him in this case because he did not know at the time he obtained Plaintiff's consent to undergo the surgery that he was not legally authorized to perform the surgery.

Battery is an intentional tort. **Bowers v. Lee**, 577 S.E.2d 9, 10 (Ga. Ct. App. 2003). In the medical context, a battery may result if a physician undertakes to treat a patient without the patient's express or implied consent. **Mims v. Boland**, 138 S.E.2d 902, 906 (Ga. Ct. App. 1964). For purposes of medical treatment, the term "consent" "refers to 'basic' consent," i.e. "the consent to a 'touching.'" **Ketchup v. Howard**, 543 S.E.2d 371, 374 (Ga. Ct. App. 2000). "A medical 'touching' without consent is like any other touching without consent: it constitutes the intentional tort of

battery for which an action will lie." *Id.* Medical treatment rendered with a patient's consent, while not technically a battery, can give rise to a claim for battery if the patient's informed consent to the touching was obtained by "fraudulent misrepresentation." O.C.G.A. § 31-9-6(d) (Lexis 2005); ***Bethea v. Coralli***, 546 S.E.2d 542, 544 (Ga. Ct. App. 2001).

Section 31-9-6(d) of the Official Code of Georgia provides:

> A consent to surgical or medical treatment which discloses in general terms the treatment or course of treatment in connection with which it is given and which is duly evidenced in writing and signed by the patient or other person or persons authorized to consent pursuant to the terms of this chapter shall be conclusively presumed to be a valid consent in the absence of fraudulent misrepresentations of material facts in obtaining the same.

O.C.G.A. § 31-9-6(d). To vitiate a patient's informed consent to medical treatment obtained by fraudulent misrepresentation, the patient must show that: (1) the misrepresentation or falsehood was knowingly made; (2) that it related to a material fact; (3) that its purpose was to deceive another and induce him to act; (4) that he did act upon it; and (5) that he was injured as a result. *See **Ideal Pool Corp. v. Baker***, 377 S.E.2d 511, 513 (Ga. Ct. App. 1988). "Where there is no evidence [of] scienter, that is, that a false statement was knowingly made with false design, there can be no recovery. An innocent misstatement may amount to negligence but it is not fraud." *Id.*; *see **Lloyd v. Kramer***, 503 S.E.2d 632, 635 (Ga. Ct. App. 1998).

The main issue for determination with respect to Plaintiff's battery claim is whether or not Plaintiff's consent to the leg-lengthening procedure was valid. In his Answer, Dr. Vito admitted that he represented to Plaintiff: (1) that he was authorized under Georgia law to perform the

8

cosmetic procedure on him; (2) that he was qualified and competent to perform the cosmetic procedure on him; and (3) that he was legally authorized to perform cosmetic limb-lengthening surgery in Georgia. (Vito Answer, doc. 3, at 4, 9.) It is undisputed that the foregoing representations made by Dr. Vito have subsequently been rendered false by the decisions of this Court and the Georgia Court of Appeals. The key question now, however, is whether or not Dr. Vito knew that the foregoing representations were false at the time he related this information to Plaintiff.

Dr. Vito maintains that he did not know that he was not authorized to perform leg-lengthening surgery at the time he obtained Plaintiff's consent to undergo the procedure. (Pl.'s Br., doc. 136, Ex. A, at 3.) Thus, Dr. Vito argues that he could not have willfully, and therefore fraudulently, induced Plaintiff's consent to the procedure. Plaintiff, on the other hand, asserts that, because Dr. Vito represented that he was authorized to perform the surgery, and because subsequent judicial determinations rendered his representations false, Plaintiff's consent to the procedure was vitiated by Dr. Vito's false representations.

Plaintiff equates Dr. Vito's false representations with fraudulent misrepresentations. Under O.C.G.A. § 31-9-6(d), however, only misrepresentations of a *fraudulent* nature will vitiate a patient's consent and support a claim for battery. To support the assertion that Dr. Vito obtained Plaintiff's informed consent by fraudulent misrepresentation, Plaintiff must offer, among other things, proof of scienter. *See **Kramer***, 503 S.E.2d at 634. Yet, Plaintiff offers no allegation or proof

of scienter. Plaintiff has not contended nor shown that, when Dr. Vito told Plaintiff that he was legally authorized to perform leg-lengthening surgery and obtained Plaintiff's consent to the procedure, he did so with the knowledge that his statements were false, and with the intention to induce Plaintiff to undergo an illegal surgery. The fact that Dr. Vito's statements were judicially determined to be false only *after* Plaintiff underwent the procedure strengthens Dr. Vito's argument that he did not have the knowledge requisite to establish a claim or genuine issue of material fact on the fraudulent-misrepresentation issue. Because fraudulent, and not merely false, misrepresentation is required to vitiate informed consent under O.C.G.A. § 31-9-6(d), the Court is inclined to enter summary judgment <u>against</u> Plaintiff on his battery claim.

District courts possess the power to trigger summary judgment on their own initiative. *See Celotex Corp.,* 477 U.S. at 326. Federal Rule of Civil Procedure 56 ordinarily requires district courts to give the parties notice before entering summary judgment *sua sponte*—even when the district court contemplates awarding summary judgment against the moving party. Such notice is not required here, however, because the battery issue has been fully briefed by the parties. *See Artistic Ent., Inc. v. City of Warner Robins*, 331 F.3d 1196, 1202 (11th Cir. 2003).

Accordingly, in the absence of any evidence creating a genuine issue of material fact on Plaintiff's battery claim, the Court hereby **GRANTS** summary judgment in favor of Dr. Vito on this claim.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment on his unauthorized practice of medicine claim against Dr. Vito is hereby **GRANTED** because Dr. Vito performed surgery on Plaintiff in violation of the Georgia Podiatry Act. However, Plaintiff's Motion for Partial Summary Judgment on his claim of battery is hereby **DENIED** because Plaintiff consented to the surgery, and there is no evidence that Plaintiff's consent was obtained by fraudulent misrepresentation. Thus, in the absence of a genuine issue of material fact on that issue, the Court hereby **GRANTS** summary judgment in favor of Dr. Vito on Plaintiff's battery claim.

SO ORDERED, this 5th day of September, 2006.

/s/ **Duross Fitzpatrick**
DUROSS FITZPATRICK, JUDGE
UNITED STATES DISTRICT COURT

DF/jab