IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| JAY OTERO, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | 5:04-CV-211 (DF) |
| | : | |
| GEORGE VITO, D.P.M., FOOT & LEG | : | |
| CENTERS OF GEORGIA, P.C., | : | |
| and MIDDLE GEORGIA HOSPITAL, | : | |
| L.L.C., | : | |
| | : | |
| | : | |
| Defendants. | : | |

## O R D E R

### I. INTRODUCTION

Before this Court is the Motion for Sanctions or in the Alternative to Compel (doc. 249) filed by Plaintiff Jay Otero ("Plaintiff") against Defendant Middle Georgia Hospital, L.L.C. ("MGH"). Plaintiff seeks "an Order precluding MGH from admitting any evidence or making any argument that contradicts the testimony in the 30(b)(6) deposition and further instructing the jury that certain facts are established." (Pl.'s Mot. Sanctions, doc. 249, at 1.) Alternatively, Plaintiff seeks "all fees, costs and expenses associated with th[e] 30(b)(6) deposition and any future deposition." (Id.) For the reasons stated below, Plaintiff's Motion for Sanctions is hereby **GRANTED IN PART**, and **DENIED IN PART**.

1

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed the instant medical-malpractice action on July 7, 2004. On March 31, 2005, Plaintiff amended his Complaint to include, inter alia, Georgia RICO claims against MGH. (Pl.'s Am. Compl., doc. 46, at ¶¶ 157-72.) During discovery, Plaintiff sought to depose MGH in accordance with Federal Rule of Civil Procedure 30(b)(6). Pursuant to a consent order dated July 7, 2006, MGH agreed to designate a corporate representative to testify on its behalf. Plaintiff noticed the deposition on July 7, 2006, and included with the notice a list of 55 topics upon which the representative would be expected to testify.

On August 2, 2006, MGH produced its former CEO, Mark Nichols, for the 30(b)(6) deposition. At the outset of the deposition, Mr. Nichols affirmatively indicated that he knew that he was testifying as MGH's corporate representative, and not in his personal capacity. Shortly thereafter, counsel for MGH, Robert Roth, informed Plaintiff's counsel, Scott Nottingham, that MGH objected to Mr. Nichols testifying with respect to approximately 18 of the 55 categories that Plaintiff had hoped to explore during Mr. Nichols's deposition. Many of Mr. Roth's objections related to the categories that Mr. Roth felt impermissibly encroached on information this Court had already ruled to be protected by the peer-review privilege. (*See* Order, doc. 97, at 4-5.) Most of Mr. Roth's remaining objections were based on his contention that the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-91, 110 Stat. 1936 (1996), prevented

2

Mr. Nichols from discussing the patient information implicated in some of the noticed topics. Although Mr. Roth sought to preclude Mr. Nichols from testifying about certain topics, Mr. Roth never filed for a protective order to limit the scope of Mr. Nottingham's inquiry during the 30(b)(6) deposition, even after receiving notice of the categories upon which MGH's corporate representative would be deposed.

Following the discussion between Mr. Roth and Mr. Nottingham regarding the objected-to categories, Mr. Nichols's deposition finally got underway. Once Mr. Nottingham began deposing Mr. Nichols, it rapidly became apparent that Mr. Nichols was utterly unprepared. Mr. Nichols did not personally review any documents in preparation for the deposition, nor did anyone provide him with substantive information relating to the categories Mr. Nottingham noticed for deposition. (Nichols Dep. 26.) In fact, Mr. Nichols testified that his total preparation time for the deposition was just three hours, two hours of which he spent meeting with counsel. (Nichols Dep. 84.) Although Mr. Nichols directed MGH's former risk manager, Lynn Hamilton, to acquire documents responsive to the 55 categories Mr. Nottingham noticed for deposition, Ms. Hamilton was unable to locate any information before the deposition took place. Apparently, Ms. Hamilton had difficulty acquiring MGH's records because MGH ceased operations in the fall of 2002. Nonetheless, instead of attempting to reschedule the 30(b)(6) deposition for a later date when more information was available, Mr. Roth allowed Mr. Nichols to appear and testify

about the few facts within his personal knowledge. Following Mr. Nichols's largely unresponsive deposition, Mr. Nottingham filed the Motion for Sanctions now before this Court.

### III.    LEGAL DISCUSSION

Federal Rule of Civil Procedure 30(b)(6) requires a corporation served with a deposition notice to "designate one or more officers, directors, or managing agents, or other persons to testify on its behalf." Fed. R. Civ. P. 30(b)(6). Rule 37(d) provides that:

> [i]f a party or an officer, director, or managing agent of a party . . . fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice . . . the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2)[1] of this rule. . . . In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

---

[1] Rule 37(b)(2) and subparagraphs (A), (B), and (C) read:
If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence; [and]
(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party[.]
Fed. R. Civ. P. 37(b)(2)(A)-(C) (West 2006).

4

Fed. R. Civ. P. 37(d). In some jurisdictions, a 30(b)(6) corporate designee's lack of preparation for a deposition is deemed to be a "failure to appear," for purposes of Rule 37(d). *See* ***Black Horse Lane Assoc.'s, L.P. v. Dow Chem. Corp.***, 228 F.3d 275, 302 (3d Cir. 2000) ("[W]hen a witness is designated by a corporate party to speak on its behalf pursuant to Rule 30(b)(6), producing an unprepared witness is tantamount to a failure to appear that is sanctionable under Rule 37(d)."); ***Starlight Int'l, Inc. v. Herlihy***, 186 F.R.D. 626, 639 (D. Kan. 1999) (same); ***United States v. Taylor***, 166 F.R.D. 356, 363 (M.D.N.C. 1996) (same).

As the Fifth Circuit observed in ***Resolution Trust Corp. v. S. Union Corp.***, 985 F.2d 196 (5th Cir. 1993):

> Rule 30(b)(6) streamlines the discovery process. It places the burden of identifying responsive witnesses for a corporation on the corporation. Obviously, this presents a potential for abuse which is not extant where the party noticing the deposition specifies the deponent. When a corporation or association designates a person to testify on its behalf, the corporation appears vicariously through that agent. If that agent is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all.

*Id.* at 197.

Concomitant with a corporation's duty to produce a responsive witness is its duty to prepare the witness "so that [he or she] may give complete, knowledgeable and binding answers on behalf of the corporation." ***Marker v. Union Fid. Life Ins.Co.***, 125 F.R.D. 121, 126 (M.D.N.C. 1989); *see also* ABA Standards, 19(f) (Duty to Prepare the Witness). A

5

corporate designee must testify "beyond matters personally known to the designee or to matters which that designee was personally involved." *United States v. J.M. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996). This means that the designee's testimony must encompass "facts within the corporation's knowledge . . . its subjective beliefs and opinions . . . [and] its interpretation of documents and events." *Id.* (citation omitted). Upon notification of a 30(b)(6) deposition, a corporation "cannot take a laissez faire approach to the inquiry. That is, producing a designee and seeing what he has to say or what he can cover. A party does not meet his obligations under Rule 26 or 30(b)(6) by figuratively throwing up its hands in a gesture of helplessness." *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 504 (D. Md. 2000) (internal quotation marks omitted). "If the originally designated spokesman for the corporation lacks knowledge in the identified areas of inquiry, that does not become the inquiring party's problem, but demonstrates the responding party's failure of duty." *Id.* at 504-05.

With these principles in mind, the Court turns to the 30(b)(6) deposition at issue in this case. Upon reading Mr. Nichols's deposition, the Court was immediately struck by how little time—three hours—Mr. Nichols spent preparing for the deposition. Incredibly, Mr. Nichols did not personally review <u>any</u> documents in preparation for the deposition, nor did he receive from MGH's counsel or risk manager any substantive information relating to the categories Mr. Nottingham noticed for deposition.

6

Despite Mr. Nichols's laissez-faire attitude toward preparation, however, the Court cannot conclude that Mr. Nichols wholly failed to appear for his deposition, so as to justify an order deeming the 18 facts set out by Plaintiff in his brief (doc. 250, at 1) admitted against MGH. It can be said, however, that Mr. Nichols largely failed to appear for his deposition, which resulted in a partial violation of Rule 30(b)(6).

To MGH's credit, Mr. Nichols did physically appear and give testimony with respect to several areas of inquiry listed in the deposition notice. Mr. Nichols provided responses to Mr. Nottingham's inquiries regarding MGH's processes for creating, maintaining, and accessing patient medical records. (*See* Dep. Notice, Category No.'s 37-39; Nichols Dep. 65-82.) In addition, Mr. Nichols testified about MGH's understanding of "JCAHO standards and/or guidelines applicable to MGH at the time of Dr. Vito's credentialing." (*See* Dep. Notice, Category 31; Nichols Dep. 93-105.) Finally, Mr. Nichols explained the responsibilities of MGH's chief executive officer in ensuring hospital safety. *See* Nichols Dep. 104.

Notwithstanding Mr. Nichols's ability to provide the above information based on his personal knowledge, Mr. Nichols could not give MGH's position on numerous other areas of inquiry noticed by Plaintiff. Mr. Nichols could not testify at all as to the information or communications MGH received concerning Plaintiff's cosmetic limb-lengthening surgery at MGH. (*See* Dep. Notice, Category No. 24; Nichols Dep. 38-39; 47-

7

48.) Nor could Mr. Nichols testify as to: (1) the steps MGH took before a cosmetic limb-lengthening surgery was performed at MGH (*see* Dep. Notice, Category 46); (2) the extent to which "MGH's facilities, personnel, supplies, and equipment" were used in connection with cosmetic limb-lengthening surgeries performed at MGH (Id. at Category 48); or (3) the methods by which patients were transported, monitored, and cared for by MGH staff before, during, and after cosmetic limb-lengthening surgeries (Id. at Category 50). (Pl.'s Br. Supp. Mot. Sanctions, doc. 250, at 8.) Mr. Nichols also could not answer questions about the amount MGH billed Plaintiff for goods and services related to his leg-lengthening surgery. (Nichols Dep. 29-30.) In fact, Mr. Nichols could not even confirm, on MGH's behalf, that Plaintiff was ever a patient at MGH. (Nichols Dep. 32-33.)

MGH attempts to attribute Mr. Nichols's lack of preparedness to the difficulties inherent in acquiring information about the business practices of a hospital that is no longer in operation. While this argument may explain Mr. Nichols's inability to respond to <u>some</u> of the noticed areas of inquiry, it does not justify Mr. Nichols's inability to answer questions relating to information that MGH's counsel <u>already</u> had in its possession. Based on Mr. Nichols's testimony, it is clear that MGH's counsel did not provide him with <u>any</u> information in its possession that was responsive to the noticed topics. For example, even tthough MGH had previously produced information in response to Plaintiff's interrogatories concerning the amount MGH billed for certain goods and services, MGH

did not make this information available to Mr. Nichols. (Pl.'s Br. 10.) Nor did MGH provide Mr. Nichols with copies of the two checks made payable to MGH, from Defendant Foot & Leg Centers of Georgia, for services MGH rendered to Plaintiff. (Id.) Likewise, MGH neglected to give Mr. Nichols a copy of MGH's bylaws, despite the fact that three of the noticed topics (Category No.'s 11, 32, 34) specifically referred to the bylaws. (Pl.'s Br. 10.) In short, MGH did little, if anything, to prepare Mr. Nichols for the 30(b)(6) deposition in this case, despite the fact that it had the resources to do so. MGH's failure to produce a prepared corporate designee for a 30(b)(6) deposition is, in a word, unacceptable.

Although MGH's counsel made the argument that it lodged objections to some of the categories noticed by Plaintiff (18 to be exact), this argument does not wholly absolve MGH of its failure to produce a prepared corporate witness. If MGH found some of the noticed topics objectionable, it should have sought a protective order preventing Mr. Nottingham from delving into the areas of inquiry to which MGH objected. *See* Fed. R. Civ. P. 37(d) (Corporate designee's failure to appear at deposition "may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has a pending motion for a protective order as provided by Rule 26(c)."). Nor is this Court persuaded by MGH's argument that its duty to produce a prepared witness was somehow lowered because many of the noticed categories sought information that MGH had already

9

produced to Plaintiff. Plaintiff is entitled to discover facts within the corporation's knowledge, the corporation's subjective beliefs and opinions, and its interpretation of documents and events—even if some of this information is already in Plaintiff's possession. *Taylor*, 166 F.R.D. at 361. A corporation's subjective beliefs and opinions, as well its interpretation of certain documents and events, often cannot be gleaned from the mere production of documents. The best source of this information is a knowledgeable witness who has the power to bind the corporation with his or her answers. *See Marker*, 125 F.R.D. at 126. It is for this reason that MGH's offer to supplement Mr. Nichols's sparse testimony with answers to written questions is a wholly inadequate substitute for the live testimony of a corporate representative.

## IV. CONCLUSION

In light of the foregoing, the Court finds that MGH should be sanctioned for the failure of its corporate designee, Mr. Mark Nichols, to "appear," as that phrase is understood, for over half of the areas of inquiry noticed by Plaintiff in his notice of deposition. The appropriate sanction will not, however, consist of instructing the jury that the eighteen facts—as laid out in Plaintiff's Motion for Sanctions–are established. Nor will the Court, at this time, preclude MGH from contradicting what little testimony was elicited during the 30(b)(6) deposition at trial. MGH has already agreed to appear for a second 30(b)(6) deposition on or before December 15, 2006. (Consent Mot., doc. 322, at 1.) For this

deposition, the Court hereby ORDERS MGH's designated representative(s) to be prepared to testify on all noticed areas of inquiry not covered or covered insufficiently during Mr. Nichols's initial deposition. If MGH seeks to limit any of the testimony sought by Plaintiff—including testimony MGH believes to be protected by its peer-review/credentialing privilege—it must move for a protective order on or before December 15, 2006. In addition, the Court will award Plaintiff his reasonable fees, costs, and expenses associated with Mr. Nichols's 30(b)(6) deposition as a sanction for MGH's failure to properly prepare Mr. Nichols for the deposition. Counsel for Plaintiff must submit an affidavit and appropriate documentation to support this award.

Accordingly, Plaintiff's Motion for Sanctions (doc. 249) is hereby **GRANTED IN PART**, and **DENIED IN PART**.

SO ORDERED, this 7th day of December, 2006.

**/s/ C. Ashley Royal**
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT

CAR/jab