**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **JAY OTERO,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **5:04-CV-211 (CAR)** |
| | : | |
| **GEORGE VITO, D.P.M., FOOT & LEG** | : | |
| **CENTERS OF GEORGIA, P.C.,** | : | |
| **AND MIDDLE GEORGIA** | : | |
| **HOSPITAL, L.L.C.,** | : | |
| | : | |
| **Defendants.** | : | |

**<u>O R D E R ON MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

**I.      INTRODUCTION**

This matter is before the Court on a Motion for Partial Summary Judgment (doc. 297) filed by Defendant Middle Georgia Hospital ("Hospital" or "MGH").  MGH seeks partial summary judgment on Plaintiff Jay Otero's claims brought pursuant to the Georgia Racketeer Influenced and Corrupt Organizations ("RICO") Act, as well as Otero's claims based on fraud, misrepresentation, agency, and respondeat superior. (Def.'s Br. Supp. Mot. Partial Summ. J., doc. 298, at 3.)   For the reasons stated below, MGH's motion is **GRANTED**.

1

## II.    STANDARD OF REVIEW

The summary-judgment rule exists "to isolate and dispose of factually unsupported claims of defenses."  *Celotex Corp v. Catrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c) (West 2005); *see also* *Celotex Corp.*, 477 U.S. at 322.  A genuine issue of material fact necessary to defeat a properly supported motion for summary judgment arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In reviewing a motion for summary judgment, a court must review all the evidence in the record while "draw[ing] all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also* *Maynard v. Williams*, 72 F.3d 848, 851 (11th Cir. 1996).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and entitle it to a judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted). If the moving party discharges this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions. *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). Under this scheme, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

## III.    FACTUAL BACKGROUND

Otero underwent cosmetic leg-lengthening surgery at Defendant Middle Georgia Hospital in August 2002. Otero signed consent forms and paid Dr. Vito approximately $53,000 to perform the surgery. The procedure was estimated to increase Otero's height (5'1") by one to three inches. At the time of the procedure, Dr. Vito was an employee of

Defendant Foot and Leg Centers of Georgia ("Foot & Leg Centers") and had surgical privileges at the Hospital. Dr. Vito is a licensed podiatrist. He is not a medical doctor.

At the time of the procedure, Otero was not suffering from any disease, ailment, abnormality, or injury to his feet or legs. During the procedure, Dr. Vito cut the tibia and fibula bones of both of Otero's legs just beneath the knee and attached an external-fixator device to keep the bones separated until regenerated bone filled in the separation at a rate prescribed by Dr. Vito. The regeneration of bone in the separated area was supposed to increase Otero's height. Otero's height increased three and one-half inches after the surgery; however, he is now crippled and must undergo additional procedures to correct the damage allegedly wrought by the leg-lengthening surgery.

Otero initially brought a nine-count Complaint against Defendants, alleging (1) negligence per se, (2) unlawful practice of medicine, (3) fraud and misrepresentation, (4) professional malpractice, (5) respondeat superior, (6) negligent grant of staff privileges, (7) negligent credentialing, and seeking punitive damages. (Compl., doc. 1, at ¶¶ 47-112.) Otero thereafter amended his Complaint twice to include civil battery and Georgia RICO claims, and to modify his negligent grant of staff privileges claim. (Am. Compl., doc. 46; 2d Am. Compl., doc. 229).

On October 21, 2004, the Court[1] granted Otero partial summary judgment on his negligence per se claim against Dr. Vito and Foot & Leg Centers, finding that Dr. Vito's performance of cosmetic leg-lengthening surgery violated the Georgia Podiatry Act,[2] and was negligent per se as a matter of law. (Order, doc. 28, at 5.) On April 4, 2006, the Court granted Otero partial summary judgment on his negligent-credentialing claim against MGH, finding that MGH's grant of surgical privileges to Dr. Vito was negligent per se as a matter of law. (Order, doc. 205, at 11.) On September 5, 2006, the Court granted Otero partial summary judgment on his unauthorized practice of medicine claim, but denied his summary-judgment motion with respect to his civil battery claim. Because Otero offered no summary-judgment evidence to support his battery claim, the Court, on its own initiative, granted summary judgment in Dr. Vito's favor on that claim. (Order, doc. 258, at 7, 10-11.)

On October 30, 2006, MGH moved for partial summary judgment on Otero's Georgia RICO, fraud, misrepresentation, agency, and respondeat-superior claims. The Court will address each of MGH's arguments separately, below.

---

[1] On September 5, 2006, this case was reassigned from the Honorable Duross Fitzpatrick, United States District Judge for the Middle District of Georgia, to the undersigned.

[2] *See* O.C.G.A. § 43-35-3(5) (Lexis 2005).

5

## IV.  LEGAL DISCUSSION

## A.  Georgia RICO

The Georgia RICO Act ("RICO" or "Act"), codified at O.C.G.A. § 16-14-1, *et seq*, provides, in relevant part:

> (a) It is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money. . . .
> (c) It is unlawful for any person to conspire or endeavor to violate any of the provisions of subsection (a) . . . of this Code section.

O.C.G.A. § 16-14-4.  Section 16-14-6(c) of the Act authorizes a civil cause of action for individuals "injured by reason of any violation of Code Section 16-14-4." O.C.G.A. § 16-14-6(c).  In this case, Otero alleges that MGH violated subsections (a) and (c) of the Act.  (2d Am. Compl. ¶ 3.)  The Court will first address Otero's allegations arising under subsection (a).

### 1. Subsection (a)

To establish a triable issue of fact under subsection (a) of the Act, Otero must show that: (1) MGH is a "person" who (2) acquired money "directly or indirectly" (3) through "a pattern of racketeering activity."  O.C.G.A. § 16-14-4(a).  MGH insists that Otero cannot make the requisite showing under subsection (a) because: (1) MGH, as a corporation, is not

a "person" as that term is defined under the statute, (2) Otero cannot establish a "pattern of racketeering activity," and (3) MGH did not have the requisite intent to commit any of the predicate acts alleged, i.e. aggravated battery and theft by taking.  First, the Court will address whether Otero has established "a pattern of racketeering activity," that is, whether Otero has raised a genuine issue of material fact as to that element of his RICO claim.

**(a)** *Has Otero established a "pattern of racketeering activity?"*

The Act defines a "pattern of racketeering activity" as "engaging in at least <u>two</u> <u>acts</u> of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents . . . ."  O.C.G.A. § 16-14-3(8)(A) (emphasis added).  The Act further defines "racketeering activity" as the perpetration of one or more of the crimes set forth in O.C.G.A. § 16-14-3(9)(A).  These crimes, often referred to as "predicate acts," include theft by taking, aggravated battery, and mail and wire fraud.  *See* O.C.G.A. § 16-14-3(9)(A)(v), (ix), (xxix).  The existence of racketeering activity may be established by circumstantial evidence.  *Faillace v. Columbus Bank & Trust Co.*, 605 S.E.2d 450, 454 (Ga. Ct. App. 2004).

Otero alleges that MGH "aided or abetted" Dr. Vito's commission of two predicate acts: theft by taking and aggravated battery.  (Pl.'s Br. 14.)  The Court now turns to Otero's

allegations concerning the predicate act of aggravated battery.

**(i)** *Is there a genuine issue of material fact as to whether MGH aided or abetted Dr. Vito's alleged commission of aggravated battery?*

Otero alleges that Dr. Vito and Foot & Leg Centers, on one occasion, "committed the offense of aggravated battery by maliciously causing bodily harm to [him], rendering members of his body useless, and seriously disfiguring his body and members thereof . . . ." (2d Am. Compl. ¶ 54.) Otero alleges further that MGH aided and abetted Dr. Vito's commission of aggravated battery by "intentionally ma[king] its staff, equipment, patient in-take facilities, and hospital rooms available for Defendant Vito's performance of unlawful elective cosmetic limb-lengthening surgeries," despite its knowledge that Dr. Vito was a podiatrist and that his performance of elective cosmetic surgeries was unlawful. (*Id.* at ¶ 63.)

Insofar as the Court can tell, "aiding and abetting" in the commission of a predicate act under the Georgia RICO Act is the legal equivalent of actually committing that act. *See* O.C.G.A. § 16-2-20(a) ("[E]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime."); O.C.G.A. § 16-2-20(b)(3) ("A person is concerned in the commission of a crime" if he "[i]ntentionally aids or abets in the commission of the crime"); *see also* ***Cox. v. Adm'r U.S. Steel & Carnegie***,

17 F.3d 1386, 1410 (11th Cir. 1994) ("One who aids and abets two predicate acts can be civilly liable under RICO.").  Generally, to impose civil liability for aiding and abetting under RICO, "the plaintif[f] must show: (1) that the defendant was generally aware of the defendant's role as part of an overall improper activity at the time that he provides the assistance; and (2) that the defendant knowingly and substantially assisted the principal violation."  *Cox*, 17 F.3d at 1410.[3]  Before addressing whether MGH can be held liable for aiding and abetting Dr. Vito's alleged commission of aggravated battery, however, the Court must examine whether Dr. Vito himself can be held liable for aggravated battery.

Otero's Georgia RICO claim, though civil in nature, requires proof of the predicate (read: criminal) act of aggravated battery.  The determination of whether the requisite elements of aggravated battery are present in this case depends, in part, on an understanding of this case's procedural history and the distinction between the intentional tort of battery (which is, by nature, a civil claim) and an aggravated battery (which is generally a criminal charge).

A civil battery is an intentional tort.  *Bowers v. Lee*, 577 S.E.2d 9, 10 (Ga. Ct. App.

---

[3] The Court's research has not revealed a Georgia court decision articulating the requirements for imposing civil liability for aiding and abetting under the Georgia RICO Act.  Nonetheless, because the Georgia RICO Act tracks the language of its federal counterpart, Georgia courts often follow federal RICO decisions.  *See Stanton v. Shearson Lehman/Am. Exp. Inc.*, 622 F. Supp. 293, 294 (D.C. Ga. 1985). In light of the Court's inability to apply Georgia law to this particular issue, this Court will do the same.

2003). If a physician undertakes to treat a patient without the patient's express or implied consent, a civil battery may result. *Mims v. Boland*, 138 S.E.2d 902, 906 (Ga. Ct. App. 1964). For purposes of medical treatment, the term "consent" "refers to 'basic' consent," i.e., "the consent to a 'touching.'" *Ketchup v. Howard*, 543 S.E.2d 371, 374 (Ga. Ct. App. 2000). "A medical 'touching' without consent is like any other touching without consent: it constitutes the intentional tort of battery for which an action will lie." *Id.* Medical treatment rendered with a patient's consent, while not technically a battery, can give rise to a claim for battery if the patient's informed consent to the touching was obtained by "fraudulent misrepresentation." O.C.G.A. § 31-9-6(d) (Lexis 2005); *Bethea v. Coralli*, 546 S.E.2d 542, 544 (Ga. Ct. App. 2001).

An aggravated battery, by contrast, occurs when a person "maliciously causes bodily harm to another by depriving him or her of a member of his or her body, by rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member thereof." O.C.G.A. § 16-5-24 (Lexis 2006). Because O.C.G.A. § 16-5-24 requires malicious intent to cause bodily harm, the mens rea (general criminal intent) needed to establish that an aggravated battery occurred is greater than the scienter (knowledge which can be proven by showing consent to the touching was obtained by fraud) needed to prove a civil tort claim based on battery. *Mullen v. Nezhat*, 477 S.E.2d 417, 420 (Ga. Ct. App. 1996).

10

As previously noted, this Court recently granted Dr. Vito partial summary judgment on Otero's civil-battery claim because Otero consented to the limb-lengthening surgery, and the Court found no evidence in the record to support Otero's assertion that Dr. Vito's fraudulent misrepresentations vitiated Otero's consent to the surgery. (Order, doc. 258, at 7, 10-11.) Moreover, the Court rejected Otero's subsequent attempt to introduce evidence of Dr. Vito's scienter in his Motion for Reconsideration (doc. 260) of the civil-battery issue, as the evidence sought to be introduced was available during the pendency of Otero's partial summary judgment motion. (Order, doc. 312, at 4.)

To create a fact issue on the aggravated-battery question, Otero makes a renewed attempt to introduce certain arguments and evidence relating to his civil and RICO battery claims that this Court has already rejected. Otero's persistence in this regard is understandable, as he is doubtless aware that he cannot establish that MGH aided and abetted Dr. Vito's alleged commission of aggravated battery unless the Court alters the prior decisions relating to his civil-battery claims. In other words, without proof of the scienter necessary to establish his civil-battery claim, Otero is unable to establish the mens rea needed to prove that MGH aided and abetted Dr. Vito's alleged commission of aggravated battery. *See* ***Mullen***, 477 S.E.2d at 420.

Having reviewed Judge Fitzpatrick's former decisions (doc.'s 258, 312) with respect

to Otero's civil-battery claims, the Court is satisfied that those decisions were well supported by relevant case law and the record then in existence. In the absence, therefore, of any compelling reason to alter the results of either Order, the Court must find that the previous holding—that Otero had not offered proof of the scienter necessary to establish his civil-battery claim against Dr. Vito—precludes this Court from now finding that Otero has established the mens rea needed to create a genuine issue of material fact as to whether Dr. Vito committed aggravated battery. Furthermore, Otero's inability to establish the foregoing aspect of his RICO claim against Dr. Vito also eliminates his ability to establish that MGH committed the predicate act of aiding and abetting Dr. Vito.

Unfortunately for Otero, this determination means that his RICO claim under subsection (a) of the Act fails as a matter of law. Even if Otero could establish a fact issue as to the remaining predicate act alleged—theft by taking—his subsection (a) claim would still be deficient because he cannot prove that MGH engaged in a "pattern of racketeering activity," i.e., "at least <u>two acts</u> of racketeering activity." O.C.G.A. § 16-14-3(8)(A) (emphasis added). Because the Court finds that Otero has not established "a pattern of racketeering activity," the Court need not address MGH's remaining arguments relating to subsection (a). The Court will now address Otero's conspiracy allegation.

**2. Subsection (c)**

**(a)** *Is there a genuine issue of material fact as to whether MGH conspired to aid Dr. Vito in his alleged commission of mail and wire fraud?*

Otero alleges that MGH conspired with Dr. Vito to commit mail and wire fraud, in violation of O.C.G.A. § 16-14-4(c). (Pl.'s Resp. Br., doc. 362, at 14 n.8.) In response, MGH argues, inter alia, that Otero does not have standing to pursue his conspiracy claim because the alleged conspiracy, even if proved, did not proximately cause Otero's injuries.

To prove a conspiracy under the Georgia RICO Act, Otero must demonstrate that "two or more persons tacitly came to a mutual understanding to pursue a criminal objective." *Pabey v. Georgia*, 585 S.E.2d 200, 204 (Ga. Ct. App. 2003). The Court need not determine whether the requisite elements of a conspiracy are present, however, because Otero has not established that the alleged conspiracy proximately caused his injuries.

Inherent in every Georgia RICO claim is a proximate-cause requirement. *Maddox v. S. Eng'g Co.* 500 S.E.2d 591, 594 (Ga. Ct. App. 1998) (the language "by reason of" in subsection (a), incorporated into subsection (c) of the Act, "imposes a proximate causation requirement on [ ] plaintiffs") (internal citations and quotation marks omitted). "This means that a private plaintiff who wants to recover under civil RICO must show some injury flowing from one or more predicate acts." *Id.* (quoting *Pelletier v. Zweifel*, 921 F.2d

1465, 1497 (11th Cir. 1991)). "A plaintiff cannot allege merely that an act of racketeering occurred and that he lost money. He must show a causal connection between his injury and a predicate act. If no injury flowed from a particular predicate act, no recovery lies for the commission of that act." *Id*. In other words, to survive summary judgment on a civil RICO claim, a plaintiff "must show that his injury flowed directly from" the predicate acts alleged, "not merely that his injury was an eventual consequence" of the predicate acts, or that "he would not have been injured but for" the predicate acts. *Id.*

Insofar as the Court can tell, Otero has not rebutted MGH's proximate-causation argument. Perhaps Otero's allegation that he suffered both physical and financial (i.e. the $53,000 he paid for the surgery) injuries was an invitation to the Court to infer that MGH's and Dr. Vito's conspiracy to commit mail and wire fraud proximately caused those injuries. Otero's failure to rebut MGH's proximate-cause argument is of no consequence, however, for a careful review of the record points to only one conclusion: Otero's conspiracy claim must fail because the alleged conspiracy, even if proven, did not proximately cause Otero's physical injuries. In arriving at this conclusion, the Court relies, in part, on the sound reasoning of the Eleventh Circuit in *Byrne v. Nezhat*, 261 F.3d 1075 (11th Cir. 2001).

In *Byrne*, a patient suffering from endometriosis underwent corrective laparoscopic

14

surgery at the Atlanta Center for Fertility and Endocrinology ("Center"). *Id.* at 1085-86.

Following the surgery, the patient developed a bacterial infection, which required

additional hospitalization and treatment with antibiotics. *Id.* As a result of the surgery

and ensuing treatment, the patient allegedly lost her hearing. *Id.* According to the medical

malpractice action brought by the patient, the removal of her appendix during the surgery

and the ensuing bacterial infection were the result of her physicians' negligence. *Id.* The

patient's complaint was later amended to incorporate Georgia RICO claims against the

physicians and the Center. *Id.* at 1108. The district court dismissed the patient's Georgia

RICO claims, finding that the patient failed to allege a Georgia RICO violation. *Id.* at 1115.

The Eleventh Circuit affirmed. *Id.*

On appeal, the patient re-alleged that the defendants had committed numerous acts

of racketeering under the Georgia RICO Act, all of which were anchored in the federal mail

fraud statute, 18 U.S.C. § 1341. *Id.* at 1109. Specifically, the patient argued that the

physician-defendants committed mail fraud by making false representations in their

medical journal articles "as part of a marketing scheme to obtain money by false

pretenses." *Id.* at 1110. In affirming the district court's dismissal of these claims, the

Eleventh Circuit adhered to its "restrictive view of the proximate cause requirement,"

reiterating that "a plaintiff has standing to sue [under RICO] only if his injury flowed

directly from the commission of the predicate acts." *Id.* In the court's view, the patient "was not a victim of a fraudulent misrepresentation." *Id.* at 1111. In fact, "[the patient] sought the services of the [physicians] so that they could surgically alleviate her endometriosis. [The physicians] represented to [the patient] that they would perform the surgery to rectify her endometriosis and remove her appendix if it was infected. *Any alleged injury [the patient] suffered . . . would be the result of malpractice, not fraud.*" *Id.* (emphasis added).

Just as the patient in *Byrne* sought to convince the Eleventh Circuit that her physicians' allegedly fraudulent misrepresentations proximately caused her physical injuries, Otero wishes for this Court to find that Dr. Vito's false representations about the limb-lengthening surgery—and MGH's implicit affirmance of those representations— proximately caused his physical injuries. Yet, here, as in *Byrne*, the physical injuries Otero sustained following his surgery would be the direct result of medical malpractice, not the allegedly fraudulent misrepresentations made by or through Dr. Vito.

To the extent that Otero would have this Court believe that his financial "injury" was proximately caused by a purported conspiracy between MGH and Dr. Vito, that argument is also rejected. Aside from alleging that Dr. Vito committed mail and wire fraud, and that MGH received a portion of the funds Otero paid Dr. Vito to perform the surgery, Otero

does not articulate <u>how</u> the alleged conspiracy between MGH and Dr. Vito proximately caused his financial injury. Indeed, there is no evidence to suggest that Otero's payment of the $53,000 for the surgery was the direct result of the alleged conspiracy, especially in light of the fact that <u>Otero</u> was the one who sought out <u>Dr. Vito's</u> services. In the Court's view, Otero's allegations of a financial injury and a conspiracy amount, at most, to a disjointed argument that an act of racketeering (conspiracy) occurred and he lost money.

Based on the foregoing, the Court concludes that Otero cannot, in seeking to establish a violation of subsection (c), rely on his assertion that MGH conspired with Dr. Vito to commit mail and wire fraud because the predicate act of conspiracy, even if proven, did not proximately cause Otero's injuries. In the absence of a genuine issue of material fact under either subsection (a) or (c) of the Act, then, Otero's Georgia RICO claim fails as a matter of law. Accordingly, MGH's Motion for Partial Summary Judgment on Otero's Georgia RICO claim is hereby **GRANTED**.

The Court now turns to the remaining claims upon which MGH seeks summary judgment.

**B.      Fraud and Misrepresentation**

In Count III of his Complaint, Otero alleges that MGH, "by and through its credentialing committee and employees," committed fraud and misrepresentation by

"implicitly represent[ing] to Plaintiff Otero that Dr. Vito was legally authorized to perform cosmetic limb lengthening surgery in Georgia." (Compl. ¶ 66.) MGH contends that Otero's fraud and misrepresentation claims are "fatally flaw[ed]" for three reasons. (Def.'s Br. 23.) "First . . . fraud requires proof of scienter (here, proof that the Hospital knew that Plaintiff's surgery was outside Dr. Vito's license), of which Plaintiff has none." (*Id.*) "Second, Plaintiff cannot establish proximate causation." (*Id.*) "Third, Plaintiff's own testimony disclaims detrimental reliance." (*Id.*)

In defense of his fraud claims, Otero submits that, because the affidavit[4] of one of Dr. Vito's former employees, Lisa Sanford, "establishes knowledge on the part of MGH that Vito should not perform cosmetic surgeries, and its efforts to conceal the nature of those surgeries is sufficient to establish fraud, [ ] MGH's fraud motion should be denied."[5] (Pl.'s

_____

[4] Ms. Sanford's affidavit reads, in pertinent part:
> At one point before I left [Dr. Vito's] employ, in referring to elective limb lengthening procedures for short stature, Dr. Vito stated words to the effect that "we are not supposed to be doing cosmetic surgery." Nonetheless, Dr. Vito explained to me that he had made "arrangements" with the "proper people" at MGH for cosmetic surgeries to occur at MGH so long as the participants did not refer to them as cosmetic limb lengthening surgeries.

(Pl.'s Resp., Ex. A, Sanford Aff. ¶ 5.)

[5] The Court recognizes that MGH challenges the admissibility of Ms. Sanford's affidavit testimony. (Def.'s Mot. Strike, doc. 398, at 1.) Based on a review of Ms. Sanford's affidavit, and paragraph five in particular, the Court seriously doubts that her statements are admissible. Even if the Court assumes for purposes of this discussion that Ms. Sanford's statements are admissible, though, Otero's fraud and misrepresentation claims nonetheless fail as a matter of law.

Resp. 30.) Based on the evidence now in the record, the Court concludes that MGH is entitled to summary judgment on this claim, as well.

Fraudulent misrepresentation under Georgia law requires proof of five elements. "The five elements of fraud are: (1) false representation made by the defendant; (2) scienter; (3) intention to induce plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff." *Bassett v. Jasper Banking Co.*, 629 S.E.2d 434, 436 (Ga. Ct. App. 2006) (citing *Shaw v. Cook County Fed. Ass'n*, 228 S.E.2d 326 (1976)). Here, the Court focuses on the intersection of the first and fourth elements.

On its face, Otero's allegation that MGH is liable for fraud because it "implicitly represented" to Otero that Dr. Vito was credentialed to perform limb-lengthening surgery is legally deficient. (Compl. ¶ 66.) Otero does not allege that MGH's implicit representation induced Otero to undergo surgery at MGH (as opposed to another hospital in the area), even though such a showing would be required to prevail on his fraud claim. *See id.* Perhaps Otero's failure to support his fraud claim is due in part to his deposition testimony, wherein he made it clear that he chose to undergo surgery at MGH because of its geographical proximity to his parents' home, and that he did not rely on any representations by MGH in arriving at this decision. (Otero Dep. 95, 97, 107.) Indeed, after reviewing the record, it is unclear to the Court whether MGH made any representations

19

whatsoever to Otero with respect to Dr. Vito or the surgery he was to perform on Otero.

Accordingly, in the absence of any evidence to support Otero's fraud and misrepresentation claims against MGH, the Hospital's partial summary-judgment motion with respect to those claims is hereby **GRANTED**.

## C.    Respondeat Superior and Agency

Finally, the Court addresses MGH's partial summary-judgment motion with respect to Otero's respondeat-superior/agency claim. In Count VII of his Complaint, Otero alleges that "Defendant Vito was a member of the Hospital's Credentialing Committee and, as such, was the agent of Defendant Hospital and was acting within the scope of his agency [when he performed the surgery on Otero]." (Compl. ¶ 100.) Otero further contends that this alleged agency relationship between MGH and Dr. Vito renders MGH "liable for the negligent acts and omissions of their [sic] agent, Defendant Vito, under the doctrine of respondeat superior." (Compl. ¶ 108.) MGH, for its part, argues that Otero's agency claim must fail because Otero "has no proof that Dr. Vito was the Hospital's agent even for purposes of describing or verifying his credentials at the Hospital." The Court agrees.

Under Georgia law, a hospital is generally not liable for the negligence of a physician who renders medical care at the hospital in the absence of an actual agency (i.e. employer-employee) relationship between the hospital and the physician. *See Johnson v. Am. Nat'l*

*Red Cross*, 569 S.E.2d 242, 249 (Ga. Ct. App. 2002). The true test of whether an <u>actual</u> agency relationship exists is whether the alleged "employer . . . assumes the right to control the time, manner, and method of executing the [alleged employee's] work." *Id.* (citations omitted) (emphasis added). Georgia law also provides that, even in the absence of an actual agency relationship, a hospital nonetheless can be held liable for a physician's negligence under the doctrine of apparent agency. An apparent agency relationship exists when: "(1) the hospital holds out the doctor as its agent, and (2) the patient's justifiable reliance on that holding out leads to injury." *N. Ga. Med. Ctr. v. Stokes*, 517 S.E.2d 93, 94 (Ga. Ct. App. 1999).

The record clearly demonstrates that an actual agency relationship did not exist between Dr. Vito and MGH. It is undisputed that Dr. Vito was not an employee of MGH; Dr. Vito merely held active medical staff privileges at MGH. Moreover, Dr. Vito maintained a private podiatry practice (Foot & Leg Centers) during the time period relevant to this lawsuit. And, MGH did not, as far as the Court can tell, compensate Dr. Vito for medical services he performed at the Hospital, nor did it, at any time, reserve the right to control the time, manner or method of Dr. Vito's patient care. *See Johnson*, 569 S.E.2d at 249.

It is equally clear that an apparent agency relationship did not exist between Dr. Vito

and MGH, either.  There is no evidence in the record to suggest that MGH ever held Dr.

Vito out as its agent, and, even if such evidence existed, there is nothing to suggest that

Otero relied to his detriment on MGH's alleged holding out of Dr. Vito.

In a thinly veiled attempt to circumvent the facts outlined above, Otero contends that

Dr. Vito's status as a member of MGH's credentialing committee somehow transformed

Dr. Vito into an actual or apparent agent of MGH, such that MGH assumed liability for Dr.

Vito's actions at the Hospital unrelated to his role on the committee.  This is not so.

Hospitals around the country rely on the credentialing process and the expertise of

practicing physicians when determining whether or not to grant staff privileges to

physician-applicants.  While it is unclear whether a physician's participation in the peer-

review activities of a hospital's credentialing committee renders a physician an agent of the

hospital with respect to credentialing decisions made by the committee, it is clear that a

hospital does not incur total respondeat-superior liability on behalf of a physician merely

by virtue of his participation in the hospital's credentialing activities.  To find otherwise

would create a disincentive for hospitals to conduct credentialing and peer-review

activities, and require hospitals who do conduct such activities to assume an enormous

amount of risk to do so.  For these reasons, then, the Court concludes that Dr. Vito's

membership on MGH's credentialing committee, alone, did not create an actual or

apparent agency relationship.  Accordingly, MGH is entitled to summary judgment on Otero's respondeat superior/agency claim, as well.

## V.      CONCLUSION

For the foregoing reasons, MGH's Motion for Partial Summary Judgment (doc. 297) on Plaintiff's Georgia RICO, fraud, misrepresentation, respondeat superior, and agency claims is hereby **GRANTED**.


SO ORDERED, this 6th day of February, 2007.


**/s/ C. Ashley Royal**
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT

JAB/ssh