# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | | |
|---|---|---|
| JAY OTERO, | : | |
| Plaintiff, | : | |
| vs. | : | 5:04-CV-211 (CAR) |
| GEORGE VITO, D.P.M., and FOOT & LEG CENTERS OF GEORGIA, P.C., | : | |
| Defendants. | : | |

## ORDER ON MOTION FOR DEFAULT JUDGMENT

### I. INTRODUCTION

This matter is before the Court on a Motion for Default Judgment (doc. 430) filed by Plaintiff Jay Otero ("Otero"). Otero seeks a default judgment against George Vito, D.P.M. ("Dr. Vito") and Foot & Leg Centers of Georgia ("Foot & Leg Centers") on his negligence, unauthorized practice of medicine, Georgia Racketeer Influenced and Corrupt Organizations ("RICO") Act, and punitive damages claims. (Pl.'s Mot. Default J., doc. 430, at 3 n.2.) For the reasons stated below, Otero's motion is **GRANTED**.

### II. DEFAULT JUDGMENT: STANDARD OF REVIEW

Prior to obtaining a default judgment, the party seeking judgment must first obtain

1

an entry of default. Fed. R. Civ. P. 55(a). Otero has satisfied this requirement: the Clerk's entry of default as to Dr. Vito and Foot & Leg Centers ("Defendants") was entered on December 11, 2006. After entry of default, a plaintiff is required to seek a default judgment from the court. Fed. R. Civ. P. 55(b)(2) ("the party entitled to a judgment by default shall apply to the court therefor"). Otero satisfied this requirement, as well, when he filed his Motion for Default Judgment on February 16, 2007.

The Clerk's entry of default causes all well-pleaded allegations of facts to be deemed admitted. *See* **Buchanan v. Bowman**, 820 F.2d 359, 361 (11th Cir. 1987). The Court must accept these facts as true and determine whether they state a claim upon which relief may be granted. *See* **Anheuser-Busch, Inc. v. Philpot**, 317 F.3d 1264, 1266 (11th Cir. 2003). If the Court determines that a default judgment can be granted, the Court then must decide the issue of damages. *See* **Chudasma v. Mazda Motor Corp.**, 123 F.3d 1353, 1364 n.27 (11th Cir. 1997). "If, in order to enable the court to enter judgment . . . it is necessary to take an account or to determine the amount of damages . . . the court may conduct such hearings or order such references as it deems necessary and proper. . . ." Fed. R. Civ. P. 55(b)(2).

### III. FACTUAL AND PROCEDURAL BACKGROUND

**A. Facts**

The essential facts of this case are as follows. Otero underwent cosmetic leg-

lengthening surgery in August 2002. Otero signed consent forms and paid Dr. Vito approximately $53,000 to perform the surgery. The procedure was estimated to increase Otero's height (5'1") by one to three inches. At the time of the procedure, Dr. Vito was an employee of Foot & Leg Centers. Dr. Vito is a licensed podiatrist. He is not a medical doctor.

At the time of the procedure, Otero was not suffering from any disease, ailment, abnormality, or injury to his feet or legs. During the procedure, Dr. Vito cut the tibia and fibula bones of both of Otero's legs just beneath the knee and attached an external-fixator device to keep the bones separated until regenerated bone filled in the separation at a rate prescribed by Dr. Vito.

For approximately 18 months following his August 2002 surgery, Otero remained under Dr. Vito's care and supervision. Toward the end of this period, however, Otero's dissatisfaction with his post-surgery progress prompted him to seek out the services of another physician. Otero's research eventually led him to Dr. Stuart Green, who, upon examining Otero, referred him to a specialist in the field of limb-lengthening deformities: Dr. Dror Paley. Shortly thereafter, Dr. Paley began treating Otero for bilateral nonunions of the proximal tibiae with severe greater than 45 degree valgus procurvatum deformities of both tibiae. In addition, Dr. Paley planned a course of treatment to correct Otero's

nonunions of the fibulas, equinus contractures of the ankles, and proximal migration of the fibula. In November 2006, while under Dr. Paley's care, Otero suffered an excruciatingly painful stress fracture that resulted in a complete transverse fracture through the distal aspect of his right femur. Although Otero's condition has improved somewhat since his August 2002 surgery, he remains under Dr. Paley's care and supervision.

**B.     Procedural History**

On July 7, 2004, Otero initiated the instant action against Dr. Vito and Foot & Leg Centers, alleging, inter alia, (1) negligence per se, (2) unlawful practice of medicine, (3) fraud and misrepresentation, (4) professional malpractice, (5) respondeat superior, and seeking punitive damages. (Compl., doc. 1, at ¶¶ 47-112.) Otero thereafter amended his Complaint twice to include civil battery and Georgia RICO claims. (Am. Compl., doc. 46; 2d Am. Compl., doc. 229). Neither Dr. Vito nor Foot & Leg Centers filed an answer to Otero's Second Amended Complaint.

Following a protracted and oft-contentious discovery period, Otero moved for a default judgment against the Defendants based on their failure to answer his Second Amended Complaint. The Defendants declined to challenge the entry of default and, in accordance with the parties' agreement and Federal Rule of Civil Procedure 55(b), the Court held a hearing on the issue of damages ("damages hearing") on March 5, 2007.

## IV. DAMAGES

The Defendants' liability for the acts alleged (and realleged) in Otero's Second Amended Complaint (doc. 229) is not at issue. Dr. Vito's liability for his negligence and unauthorized practice of medicine has already been established by the Court's prior rulings,[1] and the Defendants' Georgia RICO and punitive damages liability was well-pleaded in the Second Amended Complaint, and thereafter established by the entry of default against them. *See* **Buchanan**, 820 F.2d at 361; ***Cocklereece v. Moran***, 500 F. Supp. 487 (N.D. Ga. 1980). Thus, in accordance with the provisions of Rule 55(b), the Court's discussion below will be confined to its analysis of the evidence presented during the damages hearing, and its conclusions regarding the damages to be awarded.

### A. Findings

In considering the issue of damages, the Court heard the live testimony of Otero and his father, Julius Otero. Julius Otero testified about the effect his son's short stature had on his mental and emotional well-being, the reasons underpinning his son's decision to undergo limb-lengthening surgery, his role as his son's caregiver for several years

---

[1] *See* Order, Oct. 21, 2004, doc. 28, at 5 (holding Dr. Vito's performance of cosmetic limb-lengthening surgery on Otero was negligent per se); *see also* Order, Sept. 5, 2006, doc. 258, at 7 (holding that Dr. Vito engaged in the unauthorized practice of medicine by performing cosmetic limb-lengthening surgery on Otero). Foot & Leg Centers's respondeat-superior liability for Dr. Vito's actions was established by virtue of the default entry.

5

following the surgery, and his son's prolonged recovery process.  Otero himself then testified about his reasons for undergoing limb-lengthening surgery, his reasons for selecting Dr. Vito as his surgeon, Dr. Vito's representations about the surgery's likelihood of success, the medical and incidental expenses he incurred after the surgery, and the enormous physical, mental, and emotional challenges he encountered as a result of the surgery—particularly when he realized that his legs' condition had actually deteriorated, rather than improved.  Otero also indicated that, following his surgery, he consulted several orthopedic surgeons and underwent numerous corrective surgeries. Today, Otero is able to walk with the assistance of crutches, despite the fact that he was confined to a wheelchair for three years following the surgery.

After the damages hearing, the Court reviewed the depositions of Leonard Talarico, D.P.M., David Sandberg, Stuart A. Green, M.D., Dror Paley, M.D., Roger Rains, M.D., Vladimir Schwartzman, M.D., and Dr. Vito.  The Court further reviewed Otero's medical records, summary of incidental and medical expenses, and related submissions.  In reviewing the foregoing information, the Court found the testimony of Dr. Paley, Otero's treating orthopedist, to be highly relevant.  Dr. Paley's deposition reveals the details of a conversation he had with Dr. Vito at a Limb Lengthening and Reconstruction Society ("LLRS") meeting <u>before</u> Dr. Vito operated on Otero.  Having already seen three patients

whom Dr. Vito had (unsuccessfully) operated on, Dr. Paley informed Dr. Vito of these patients' respective conditions, told him that he did not feel it was appropriate for a podiatrist to be performing cosmetic leg-lengthening surgeries, and "advised him to either radically change the way he was doing [the surgeries] or preferably just stop doing [the surgeries]." (Paley Dep. 39-40.) Clearly, Dr. Vito ignored Dr. Paley's advice, and, as a result, Otero was permanently crippled.

With respect to Otero's care, Dr. Paley testified that Otero's medical records were so voluminous that his first chart was sent off to storage, and that he had only Otero's recent records in his possession. (Paley Dep. 9.) The Court also accorded weight to Dr. Paley's opinion that Dr. Vito "breached the standard of care" with respect to "multiple aspects" of Otero's treatment, as well as his observations concerning Otero's future prognosis. (*Id.* at 12, 29.) According to Dr. Paley, Otero will likely require an ankle fusion of his left ankle due to the arthritis that has developed in that region, surgery to "equalize [his] leg length difference," and a knee replacement of his left knee. (*Id.* at 29.) Finally, the Court acknowledges that, in all likelihood, Otero will never fully recover from the injuries he suffered while under Dr. Vito's care and supervision. (*Id.* at 33.)

**B.     Award**

In addition to the actual and special damages to which Otero is obviously entitled,

Georgia RICO authorizes an award of "three times the actual damages sustained and, where appropriate, punitive damages" to "any person who is injured by reason of any violation of" the Act. O.C.G.A. § 16-14-6(c). "Punitive damages further RICO's goal of imposing sanctions, O.C.G.A. § 51-12-5.1(c)," while "treble damages further RICO's goal of compensating victims." *S. Intermodal Logistics, Inc. v. D.J. Powers Co.*, 10 F. Supp. 2d 1337, 1348 (S.D. Ga. 1998). A Georgia RICO victim is also entitled to "recover attorneys' fees in the trial and appellate courts and costs of investigation and litigation reasonably incurred." O.C.G.A. § 16-14-6(c).

Based on the facts of this case, the Court finds that Otero is entitled to an award of treble damages and punitive damages. Accepting the truth of Otero's allegations regarding Dr. Vito's witness and evidence tampering, as the Court must at this stage of the proceedings, the Court finds such allegations sufficiently demonstrate Dr. Vito's "willful misconduct, malice, fraud, wantonness, or oppression," to justify the award of treble damages and punitive damages against the Defendants. *See* O.G.G.A. §§ 16-14-6(c), 51-12-5.1(b); *see also* Pl.'s 2d Am. Compl. ¶¶ 67-90.

Based on the evidence presented in this case, then, the Court finds that Otero is entitled to the following:

1. Special damages in the amount of $ 721,989.24;

2. Treble actual[2] damages in the amount of $ 1,500,000.00 ($ 500,000 base award);

3. Punitive damages in the amount of $ 150,000.00; and

4. Attorneys' expenses in the amount of $ 155,000.00.

As a final matter, the Court notes that, while it is inclined to award Otero's counsel their reasonable attorneys' fees, the "Contingent Fee Contract" provided by counsel is insufficient evidence of what a reasonable fee should be in this case. *See* **Hensley v. Eckerhart**, 461 U.S. 424, 435-36 (1983) (burden is on fee applicant to establish entitlement to a particular award by presenting adequate documentation of his efforts in the litigation). Accordingly, the Court hereby **ORDERS** Otero's counsel to provide the Court with a detailed statement itemizing the number of hours spent on this case, the type of work performed, and their proposed hourly rate(s).

## V. CONCLUSION

For the foregoing reasons, Plaintiff Jay Otero's Motion for Default Judgment (doc. 430) is hereby **GRANTED**.

---

[2] "The term 'actual damages' in Georgia has traditionally meant compensatory damages and does not include punitive damages and attorney fees." *Robinson v. Dep't of Corr.*, 438 S.E.2d 190, 194 (Ga. Ct. App. 1993).

SO ORDERED, this 21st day of March, 2007.


                                        <u>S/ C. Ashley Royal</u>
                                        C. ASHLEY ROYAL, JUDGE
                                        UNITED STATES DISTRICT COURT

JAB/ehe