IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| JAY OTERO, | : |
| Plaintiff, | : |
| vs. | : 5:04-CV-211 (CAR) |
| GEORGE VITO, D.P.M., and FOOT & LEG CENTERS OF GEORGIA, P.C., | : |
| Defendants. | : |

**ORDER ON MOTION FOR CLARIFICATION**

I.  **INTRODUCTION**

Before the Court are Plaintiff Jay Otero's Motion for Clarification (doc. 437) and his Submission for Attorneys Fees (doc. 438). On March 21, 2007, this Court entered an Order (doc. 436) granting Plaintiff Jay Otero's Motion for Default Judgment (doc. 430). In the March 21 Order, the Court awarded Otero treble damages under the Georgia Racketeer Influenced and Corrupt Organizations Act ("RICO" or "Act") and directed Otero's counsel to submit proof of their attorneys' fees. (Order, doc. 436, at 9.) Following the entry of this Order, Otero moved for clarification of the Court's award of treble damages under the Act (Pl.'s Mot. Clarif., doc. 437) and submitted his request for attorneys' fees (doc. 438). For the reasons stated below, Otero's Motion for Clarification (doc. 437) is **GRANTED** and his request for attorneys' fees (doc. 438) is **DENIED WITHOUT PREJUDICE**.

1

## II. LEGAL DISCUSSION

### A. Motion for Clarification

When the Court granted Otero's Motion for Default Judgment, it awarded Otero, among other things, "special" damages in the amount of $ 721,989.24, which represented the total amount of Otero's past and estimated future incidental, medical, and work-related expenses, and "actual" damages in the amount of $500,000.00 to compensate Otero for his pain and suffering. (Order, doc. 436, at 9.) In accordance with O.C.G.A. § 16-14-6(c), the Court trebled the base amount of the "actual" damages awarded, resulting in a total actual damages award of $ 1,500,000.00. *See* O.C.G.A. § 16-14-6(c) (authorizing an award of "three times the actual damages sustained and, where appropriate, punitive damages" to "any person who is injured by reason of any violation of" the Act).

In his Motion for Clarification, Otero contends that, for purposes of a treble damages award under the Act, a plaintiff's "actual" damages consist of both his "special" and "general" damages. According to Otero's calculations, instead of trebling just the amount awarded for pain and suffering, the Court should have trebled the total amount awarded for his pain and suffering <u>and</u> special damages. Under Otero's theory of recovery, the award should have been calculated this way: $500,000.00 (pain and suffering damages) + $721,989.24 (special damages) = $1,221,989.24 * 3 = $3,665,967.72. Instead, however, the Court calculated Otero's damages thusly: $500,000.00 (pain and suffering damages) * 3 =

$1,500,000.00 + $721,989.24 (special damages) = $2,221,989.24. This difference in calculation amounts to $1,443,978.48.

As previously noted, § 16-14-6(c) of the Act authorizes an award of "three times the *actual damages* sustained and, where appropriate, punitive damages" to "any person who is injured by reason of any violation of" the Act. O.C.G.A. § 16-14-6(c) (emphasis added). The issue currently before the Court centers on how to interpret and define the term "actual damages," as it is used in the Act. In Georgia, the term "actual damages" has traditionally meant "compensatory damages." **Robinson v. Dep't of Corr.**, 438 S.E.2d 190, 194 (Ga. Ct. App. 1993). Georgia law does not, however, clearly indicate whether compensatory damages consist of both special[1] and general damages,[2] or only general damages. Thus, the Court must decide whether the term "actual damages" means damages awarded for pain and suffering (read: general damages) in addition to special damages, or whether the term encompasses only general damages.

As an initial matter, the Court notes that the Georgia RICO Act, unlike its federal counterpart, authorizes the award of damages for injuries to the person, as opposed to strictly financial injuries. *See* **Reaugh v. Inner Harbour Hosp., Ltd.**, 447 S.E.2d 617, 622 (Ga.

---

[1] Under Georgia law, "special damages" are "those which actually flow from a tortious act." O.C.G.A. § 51-12-2(b).

[2] Georgia law defines "general damages" as "those which the law presumes to flow from any tortious act." O.C.G.A. § 51-12-2(a).

Ct. App. 1994). The availability of personal injury damages under the Act poses a unique problem in the context of awarding damages because, unlike a strictly financial injury, which is often one dimensional, a personal injury often requires a two-dimensional award of both "special damages," i.e., damages for medical and other incidental expenses, and pain and suffering damages, often referred to as "general damages."

The Restatement (Second) of Torts defines "general damages" as "*compensatory damages* for a harm so frequently resulting from the tort that is the basis of the action that the existence of the damages is normally to be anticipated and hence need not be alleged in order to be proved." Rest. 2d. Torts § 904 (1979) (emphasis added). "Special damages," according to the Restatement, are "*compensatory damages* for a harm other than one for which general damages are given." *Id.* (emphasis added). Under the Restatement view, then, general and special damages are viewed as types of compensatory damages, rather than separate categories of damages.

The late Charles Alan Wright and Arthur R. Miller also view compensatory damages as consisting of general and special damages. *See* 5A Charles Alan Wright & Arthur R. Miller, **Federal Practice and Procedure**, R. 9 n. 18 (3d ed. 1998) (observing that punitive damages "are not considered to be special damages . . . but are considered as being completely distinct from compensatory (that is, *general* and *special* damages)") (emphasis added).

In light of the foregoing, the answer to the issue presented seems clear: compensatory damages consist of both special and general damages. The Court's analysis is complicated, however, by the fact that Georgia courts have, on occasion, distinguished between "compensatory damages" and "special damages." *See, e.g.,* **Simpson v. Infinity Select Ins. Co.**, 605 S.E.2d 39, 40 (Ga. Ct. App. 2004) (noting trial court in action underlying insurance coverage dispute awarded plaintiff "$10 million in compensatory and special damages"). Georgia courts have also defined compensatory damages as inclusive of general and special damages, however. *See, e.g.,* **Homebuilders Ass'n v. Morris**, 518 S.E.2d 194, 196 (Ga. Ct. App. 1999) (affirming jury award totaling "$924,902 in compensatory damages, which consisted of $117,902 in future medical expenses, $225,000 in future pain and suffering, and $220,000 in future lost earnings.").

Although Georgia courts have been somewhat inconsistent in defining compensatory damages, the Court is satisfied that, in light of definition of compensatory adopted by the aforementioned treatises, the Georgia legislature likely intended "actual damages" (read: compensatory damages) awarded under the Act to consist of both special and general damages. Accordingly, the amount of damages to which Otero is entitled is hereby modified as follows:

1. Special damages in the amount of $ 721,989.24;

2. General damages in the amount of $ 500,000.00; and

3. Treble actual damages in the amount of $ 3,665,967.72

The amount of punitive damages and attorneys' expenses previously awarded remains unchanged. The Court now turns to Otero's Submission for Attorneys Fees.

**B. Otero's Request for Attorneys' Fees**

In addition to authorizing the award of actual and punitive damages and attorneys' expenses to a prevailing plaintiff, the Act also authorizes the award of attorneys' fees. O.C.G.A. § 16-14-6(c). In its March 21 Order, the Court declined to award Otero the attorneys' fees he requested because the contingent-fee contract provided by Otero's counsel was insufficient evidence of what a reasonable fee should be in this case. (Order 9.) The Court gave Otero's counsel the opportunity, however, to "provide the Court with a detailed statement itemizing the number of hours spent on this case, the type of work performed, and their proposed hourly rate(s)." (*Id.*) In response to the Court's direction, Otero filed his Submission for Attorneys Fees (doc. 438) which included documentation supporting Mr. Floyd's and Mr. Fox's attorneys' fees. With respect to the attorneys' fees for Otero's other lawyers—Mr. Nottingham, Mr. Inman, and Mr. Sacks—Mr. Nottingham stated that these attorneys "did not keep contemporaneous records" of the time they spent on this case, and that they could not "recreate those hours with additional specificity and accuracy." (Pl.'s Sub. Attys' Fees, doc. 438, at 1.) Nonetheless, Mr. Nottingham estimates that he, Mr. Inman, and Mr. Sacks spent "in excess of 2000 hours" on this case, and that the

6

"customary charge for these services is $340.00 per hour." (*Id.* at 1-2.)

The award of attorneys' fees under the Act is governed by Georgia law. ***Trans Coastal Roofing Co. v. David Boland, Inc.***, 309 F.3d 758, 760 (11th Cir. 2002) (where party's claim for attorneys' fees sounds in state law and reaches federal court by way of diversity jurisdiction, federal court applies substantive law of forum state). Under Georgia law, a court's determination of "the amount of an award of attorney fees cannot be based on guesswork"—the plaintiff must prove the actual fees incurred and the reasonableness of the fees charged. ***Oden v. Legacy Ford-Mercury, Inc.***, 476 S.E.2d 43, 45 (Ga. Ct. App. 1997); *see* ***Davis v. S. Exposition Mgmt. Co.***, 503 S.E.2d 649, 653 (Ga. Ct. App. 1998). In other words, to justify an award of attorneys' fees, a party must put forth evidence that describes with sufficient particularity how his attorneys spent their time. *See* ***Paul v. Destito***, 550 S.E.2d 739, 749 (Ga. Ct. App. 2001) (affirming trial court's refusal to award attorneys' fees where plaintiff offered "no billing records or other evidence describing, with any particularity, how the attorneys spent their time"). Moreover, "each attorney for whose service compensation is sought must provide admissible evidence of fees in the form of personal testimony, or through the testimony of the custodian of the applicable billing records." ***Santora v. Am. Combustion, Inc.***, 485 S.E.2d 34, 38 (Ga. Ct. App. 1997). Finally, a party "may recover . . . attorney fees only to the extent they are attributable solely to the claims on which [he] prevailed." ***Magnus Homes, L.L.C. v. DeRosa***, 545 S.E.2d 166, 169 (Ga. Ct. App. 2001).

The Court now addresses the request for attorneys' fees submitted by Mr. Nottingham, Mr. Sacks, and Mr. Inman. Despite the fact that the Court directed Otero's counsel to submit detailed proof of their attorneys' fees, the only additional evidence these attorneys submitted in support of their request is Mr. Nottingham's estimate that he, Mr. Inman, and Mr. Sacks spent "in excess of 2000 hours" on this case, and that the "customary charge for these services is $340.00 per hour." (Pl.'s Br. 1-2.)

As a preliminary matter, the Court notes that the amount of fees to be awarded, if any, is limited strictly to the claims against Dr. Vito and Foot & Leg Centers on which Otero prevailed. Next, the Court notes that, because Mr. Nottingham, Mr. Inman, and Mr. Sacks have not demonstrated the actual fees incurred or the reasonableness of their hourly rates, any award of fees would be, at this juncture, based primarily on guesswork. Furthermore, the only evidence before the Court that relates to the fees requested is based on Mr. Nottingham's personal knowledge alone, which is plainly insufficient. *See **Santora***, 485 S.E.2dd at 38. Accordingly, in the absence of billing records or other evidence describing, with any particularity, how these attorneys spent their time in this case, the request for attorneys' fees submitted by Mr. Nottingham, Mr. Inman, and Mr. Sacks is **DENIED** unless and until these attorneys submit more detailed records. Though, as Mr. Nottingham stated, "the Court's docket and the depositions filed with the Court reveal considerable effort by these attorneys," the Court has neither the time nor the inclination

to cull through the docket entries and estimate the amount of time Otero's attorneys must have spent preparing and filing each entry. That job falls squarely on the shoulders of those attorneys.

As for the fees requested by Mr. Floyd and Mr. Fox, while Mr. Nottingham submitted a detailed report of the time and effort these attorneys expended on this case, the report does not separate the work performed on issues relating to the default judgment obtained against Dr. Vito and Foot & Leg Centers from the work performed on other issues relating to Otero's case against a different defendant. Accordingly, the request for attorneys' fees submitted by Mr. Floyd and Mr. Fox is also **DENIED** unless and until these attorneys submit billing records—based on their personal knowledge—outlining the time attributable to Otero's case against Dr. Vito and Foot & Leg Centers only, and exclusive of work performed on issues unrelated to their case against Dr. Vito and Foot & Leg Centers and/or claims asserted against these defendants upon which Otero did not ultimately prevail.

### III. CONCLUSION

For the reasons stated above, Otero's Motion for Clarification is **GRANTED** and his submission for attorneys' fees is **DENIED WITHOUT PREJUDICE**. Otero, <u>once more</u>, may re-file his submission if and when he acquires sufficient evidence to support his request.

SO ORDERED, this 9th day of May, 2007.


                                                              <u>S/ C. Ashley Royal</u>
                                                              C. ASHLEY ROYAL, JUDGE
                                                              UNITED STATES DISTRICT COURT

JAB/ehe